ROBERT REINER, Appellant, *v.* NORTH AMERICAN NEWSPAPER ALLIANCE, Respondent.

(Argued March 24, 1932; decided June 1, 1932.)

*John A. Kelly* for appellant. Plaintiff's contract with the defendant or its performance is not a fraud upon the public or any one else, is not illegal or immoral, and is not contrary to public policy. (*Johnston* v. *Fargo,* 184 N. Y. 379; *Converse* v. *Sharpe,* 161 N. Y. 571; *Moss* v. *Cohen,* 158 N. Y. 240; *Hollis* v. *Drew Theological Seminary,* 95 N. Y. 166.)

*Charles E. Kelley* and *Christian S. Lorentzen* for respondent. A contract which is contrary to public policy and good morals is unenforceable. (*Holman* v. *Johnson,* 1 Cowp. 341; *Gray* v. *Hook,* 4 N. Y. 449; *Atcheson* v. *Mallon,* 43 N. Y. 147; *Da Costa* v. *Jones,* 2 Cowp. 729; *Grudberg* v. *Midvale Realty Co.,* 119 Misc. Rep. 558; *Bell* v. *Leggett,* 7 N. Y. 176; *Arnot* v. *Pittston & Elmira Coal Co.,* 68 N. Y. 558; *Sirkin* v. *Fourteenth Street Store,* 124 App. Div. 384; *Materne* v. *Horwitz,* 101 N. Y. 469; *Southard* v. *Jump Co.,* 43 Misc. Rep. 104; *Sprague* v. *Webb,* 168 App. Div. 292; 225 N. Y. 685; *Ridgely* v. *Keene,* 134 App. Div. 647; *Barry* v. *Mulhall,* 162 App. Div. 749.) A contract which involves the breach of a contract made by the plaintiff with a third person is against public policy and good morals, and is, therefore, unenforceable. (*Jackson* v. *Duchaire,* 3 T. R. 551; *Coventry* v. *Barton,* 17 Johns. 142; *Stone* v. *Hooker,* 9 Cow. 154; *Bolton* v. *Amsler,* 95 N. Y. Supp. 481; *Sayres* v. *Decker Automobile Co.,* 239 N. Y. 73; *Hocking Valley Ry. Co.* v. *Barbour,* 190 App. Div. 341; *Woodstock Iron Co.* v. *Richmond & Danville Extension Co.,* 129 U. S. 643.)

Hubbs, J. The plaintiff-appellant in this action on contract alleges that in October, 1928, he engaged passage to fly from Germany to New York as a passenger on the . *Graf Zeppelin;* that he entered into a contract to send " radio messages from the said *Graf Zeppelin* to friends in the United States in reply to messages sent to plaintiff by his friends and the defendant promised and agreed to pay the plaintiff $5,000 therefor;" that " the defendant agreed to make all necessary arrangements for the sending of messages to plaintiff by his friends, and for the collection of the reply messages sent by the plaintiff."

The complaint further alleges that plaintiff, while a passenger on the *Graf Zeppelin,* sent messages to his friends in the United States in reply to messages received by him from them; that he has fully performed the contract on his part but that the defendant has failed to pay him according to the terms of the contract and demands judgment for the amount unpaid.

The answer sets up as a defense:

" *Third.* The contract alleged in the complaint was made in violation of the terms of the contract by which the plaintiff engaged passage to fly from Friedrichshafen, Germany, to New York upon the dirigible *Graf Zeppelin,* in that the plaintiff knew that the exclusive news rights of the flight of the said dirigible had been acquired by a third party and the plaintiff, accordingly, had agreed, as a condition of being given passage on the said dirigible, that he would give no interviews and send no reports of the said passage while *en route* and for eight days after the completion of the flight.

" *Fourth.* The messages sent by the plaintiff, as alleged in the complaint, were reports of the flight of the said dirigible and constituted news thereof to be distributed by the defendant to newspapers for publication as news all over the United States.

" *Fifth.* The contract alleged in the complaint and the performance thereof by the plaintiff was, therefore, a

fraud upon the owners, managers and operators of the said dirigible and upon the owner of the exclusive news rights of the passage of the said dirigible from Friedrichshafen to New York, and a fraud upon the public, and was illegal, void, and against public policy and unenforcible at law or in equity."

Reading the complaint and answer together, the fair import is that the plaintiff entered into the contract with defendant with full knowledge that the exclusive news rights of the flight had been acquired by a third party by contract; that, knowing such fact, the plaintiff had agreed as a condition of obtaining passage on the dirigible that he would not send any reports of the flight; that the plaintiff in violation of the contract between the owners of the *Graf Zeppelin* and a third party and in violation of the contract between himself and the owners of the *Zeppelin,* contracted and arranged that, through a pretense of answering messages from his friends, he would secretly and in violation of the terms of those contracts send news messages to be used by the defendant for publication in newspapers in the United States.

The plaintiff moved to strike out the separate defense contained in the answer. The motion was denied and the order was affirmed at the Appellate Division by a divided court. The Appellate Division has certified the following question to this court: " Is the separate defense set out in paragraphs Third, Fourth and Fifth of the answer sufficient in law on the face thereof ? "

Assuming, as we must, the truth of the allegations contained in the answer, it appears that the conduct of the plaintiff was unconscionable, in violation of his contract of passage, and in violation of the exclusive privilege which, to his knowledge, had been granted to a third party.

Plaintiff, when he entered into the agreement with the defendant, was seeking to obtain for himself the promised advantage which had been contracted to another. That his conduct was vicious and has an evil tendency cannot

be questioned. Did it have the effect of rendering his contract with the defendant unenforceable?

It has become the settled law of this State that an action will lie for intentionally and knowingly, and without reasonable justification or excuse, inducing a breach of contract. (*Hornstein* v. *Podwitz*, 254 N. Y. 443; *Lamb* v. *Cheney & Son*, 227 N. Y. 418; *Campbell* v. *Gates*, 236 N. Y. 457.)

The law endeavors to protect the interest of parties in existing contractual relations from intentional and wrongful interference by strangers. The principle constitutes a limitation upon the doctrine of freedom of contract, which courts have imposed in an attempt to promote justice and fair dealing and to prevent wrongs.

The plaintiff is undoubtedly liable to the parties in the exclusive rights contract for all damages caused by his wrongful conduct. Such an action would sound in tort. The gravamen of the action would be plaintiff's wrongful conduct in making it impossible for the third party to reap the full benefits of the contract with the owners of the *Graf Zeppelin*.

Plaintiff caused the failure of that contract, not by persuading the owners of the *Graf Zeppelin* to refuse to carry it out, and by entering into a like contract with him, as is usual in cases of this nature, but by his conduct making it impossible for the third party to receive the full benefits of the exclusive contract rights, as the news of the voyage could no longer be exclusive after he had caused the publication of the news items through his contract with the defendant. By such conduct he became liable to the same extent as he would if he had induced the breach of the third party contract by other means.

" Under these authorities, if the Omaha Company had by its wrongful conduct simply induced the Portage Company to break its contract with Angle, it would have been liable to him for the damages sustained thereby. *A fortiori*, when it not only induces a breach of the contract

by the Portage Company, but also disables it from per-formance." (*Angle* v. *Chicago, St. Paul, etc., Ry. Co.*, 151 U. S. 1, 15.)

We do not mean to say that in all cases one who knowingly causes a breach of contract between others is liable for the damage caused by such breach. Whether liability will attach for causing such a breach of contract depends upon whether there exists sufficient justification. For a detailed discussion of that question see 36 Harvard Law Review, 663. It is sufficient for the decision of this case that no such justification exists.

The exclusive privilege contract with a third party vested in the parties thereto rights which the law protects, contract rights. It would be strange indeed if the law should protect such contract from wrongful interference by a stranger, but after such interference assist the stranger in reaping the fruits of his unjust and illegal act.

The wrongful acts of the plaintiff constituted a tort. The contract between plaintiff and defendant was a part of the scheme which resulted in the breach of the contract of passage entered into by plaintiff and interfered with the contract between the owner of the *Graf Zeppelin* and the third party. It was in effect a contract to commit a tort.

The plaintiff's act in entering into the contract cannot be said to have been negligent, incidental or foreign to the purpose of the contract with the third party. It was made with full knowledge of the third party contract. Not only did plaintiff have knowledge of that contract, but in his contract of passage he had expressly agreed not to do anything to prevent the carrying out of that contract. In utter disregard of both contracts, he entered into the agreement with defendant, knowing that the effect of the contract would be to nullify the third party contract and make its fulfillment impossible and at the same time breach his contract of passage. By his contract with the defendant, the plaintiff robbed the third

party of the exclusive right to the news rights of the voyage and attempted to take for himself the advantage which had been contracted to the third party.

A court will not lend aid to a party who has committed a tort to enable him to recover from another the price agreed to be paid for his wrongful act. The defense is allowed not as a protection to a defendant, but as a disability to the plaintiff. (*Beekman* v. *Marsters*, 195 Mass. 205; *Roberts* v. *Criss*, 266 Fed. Rep. 296; s. c., 11 A. L. R. 698, with note; *Woodstock Iron Co.* v. *Richmond & Danville Extension Co.*, 129 U. S. 643; 27 Harvard Law Review, 273; *Rhodes* v. *Malta Vita Pure Food Co.*, 149 Mich. 235; 3 Williston on Contracts, § 1738; Proposed Final Draft of the Restatement of Contracts by The American Law Institute, § 571; *Wanderers Hockey Club* v. *Johnson*, [Brit. Col.] 25 Western Law Rep. 434.)

The principle involved is somewhat analogous to that involved in a contract which constitutes a fraud upon a third party. (*Horbach* v. *Coyle*, 2 Fed. Rep. [2d] 702.)

The fact that plaintiff might be able to establish a *prima facie* case without requiring the disclosure of the elements which made the contract void would not prevent the defendant from proving that the contract in issue resulted from, was directly connected with, and was entered into for the purpose of enabling plaintiff to destroy the two contracts previously entered into with the owners of the *Graf Zeppelin*. (*Horbach* v. *Coyle, supra;* 3 Williston on Contracts, § 1753.)

The order should be affirmed, with costs, and the question certified answered in the affirmative.

POUND, Ch. J. (concurring in result). If the contract in suit put defendant in the position of one who had conspired with plaintiff to induce a breach of the plaintiff's contract of passage with the *Graf*, the case would be simple.

On the pleadings, however, we have the bare facts (a) of the contract of passage; (b) of the contract in suit.

Evidence may develop guilty conduct on the part of defendant but we may not assume it.

The only question is whether the contract sued on is, on the face of the pleadings, a bargain on the part of plaintiff to commit a tort.

The case is one where plaintiff, having secured passage on the *Graf* under conditions which precluded him from sending out information, makes the contract in suit. Obviously plaintiff intended to breach the contract of passage when he made such contract. Defendant's intentions do not appear. How is the case to be differentiated from cases where A, having contracted to sell a horse to B, sells the horse to C? One has the power, if not the right, to breach such a contract. It is not a "wrong" to breach such a contract. A mere breach of contract is not a "wrong," the sole remedy being damages for breach. I am unable to see how the rights of the public are involved or interfered with. It is a mere matter of private right.

To bargain to commit a tort, however, is illegal. Therefore, we must seek our answer here by inquiring whether plaintiff bargained to commit a tort. Was it a "wrong," independent of the breach of contract, to the *Graf* for him to go on board, intending to breach and actually breaching his contract of passage?

The *Graf* had no reason to believe that plaintiff would breach his contract of passage when he went on board. He impliedly represented that he would not. Having obtained a strategic position with a fraudulent intent, he did a wrong to the *Graf* when he broke the terms of his contract of passage. The contract with defendant, therefore, contemplated a "wrong" to the *Graf* independent of the breach of the contract of passage. It was, therefore, illegal and the defense pleaded is good.

Otherwise, plaintiff was guilty of no wrong independent of contract but of a mere breach of contract and he made

no bargain to commit a tort. (See *Rich* v. *N. Y. C. & H. R. R. R. Co.*, 87 N. Y. 382, 397; 3 Williston on Contracts, § 1738; American Law Institute, Restatement of Law of Contracts, § 571.) It is not right to break one's contract (See " The ' Right ' to Break a Contract," by Barbour, 16 Mich. Law Rev. 106; Selected Readings on the Law of Contracts, 500), but it is only a breach of duty which the parties have fixed for themselves and it cannot be turned into a tort.

CRANE, J. (concurring in result). The plaintiff has brought an action against the North American Newspaper Alliance to recover the agreed price of ten radio messages sent by him from the dirigible *Graf Zeppelin*, while it was *en route* from Friedrichshafen, Germany, to New York, in October, 1928. The defendant pleads the fraudulent or illegal conduct upon the part of the plaintiff in obtaining his information, which, it is said, will prevent the courts from affording him any relief. The allegations in the answer on this appeal must be taken as true, in order to determine whether the defense be good. The matter pleaded reads as follows: " The contract alleged in the complaint was made in violation of the terms of the contract by which the plaintiff engaged passage to fly from Friedrichshafen, Germany, to New York upon the dirigible *Graf Zeppelin*, in that the plaintiff knew that the exclusive news rights of the flight of the said dirigible had been acquired by a third party and the plaintiff, accordingly, had agreed, as a condition of being given passage on the said dirigible, that he would give no interviews and send no reports of the said passage while *en route* and for eight days after the completion of the flight. * * *

" The contract alleged in the complaint and the performance thereof by the plaintiff was, therefore, a fraud upon the owners, managers and operators of the said dirigible and upon the owner of the exclusive news rights

of the passage of the said dirigible from Friedrichshafen to New York, and a fraud upon the public, and was illegal, void, and against public policy and unenforcible at law or in equity."

In my judgment, if these allegations be true, they afford an absolute bar to the plaintiff's right of action. The doctrine of *Lamb* v. *Cheney & Son* (227 N. Y. 418) and *Campbell* v. *Gates* (236 N. Y. 457) has nothing to do with this case. The defendant did not induce the plaintiff to break his contract with a third party or conspire with him to that end. There is no such allegation in the answer. This is not a case, therefore, where the defendant would be liable for procuring the plaintiff to break his contract with another. The reason the plaintiff cannot recover is because the courts will not aid him in his fraud and deception. His own conduct has been such as to close the doors of justice to his plea.

The *Graf Zeppelin* was about to make a record flight from Germany to America and the events happening from start to finish would be of extreme interest to the news reading public. To obtain this news it was necessary to travel in the ship. While in transit the news was a secret, known only to those making the flight. The owners of the ship, therefore, had the right to keep this news to themselves the same as they had the right to possess any other property, at least, until the landing of the ship. Those in authority could impose as a condition for taking passage the promise and agreement not to reveal, by radio or otherwise, these secrets, these matters of news interest. The plaintiff obtained permission to go aboard the ship and to fly across the Atlantic upon his promise and agreement that he would not give out any accounts of the journey or the happenings on the passage. He was trusted; he was believed; he obtained the confidence and the secrets of the *Graf Zeppelin* people. And this he did, it is alleged, for the very purpose of betraying that confidence, defrauding the owners and

violating his trust. He now comes into court and asks the judiciary of this State to help him recover money from the defendant for his fraudulent and deceitful conduct. The defendant, he says, promised to pay him for his betrayal.

From a very early day the law has refused to aid plaintiffs in similar situations. While the law does not approve the defendant's conduct yet, being called upon to choose between two evils, it prefers to permit the defendant to retain the benefits of such an unlawful contract than to aid a plaintiff in enforcing it. As stated by Lord MANSFIELD in the case of *Holman* v. *Johnson* (1 Cowp. 341, 343): "The objection, that a contract is immoral or illegal as between plaintiff and defendant, sounds at all times very ill in the mouth of the defendant. It is not for his sake, however, that the objection is ever allowed; but it is founded in general principles of policy, which the defendant has the advantage of, contrary to the real justice, as between him and the plaintiff, by accident, if I may so say. The principle of public policy is this: *ex dolo malo non oritur actio*. No court will lend its aid to a man who founds his cause of action upon an immoral or an illegal act. * * * It is upon that ground the court goes; not for the sake of the defendant, but because they will not lend their aid to such a plaintiff. So if the plaintiff and defendant were to change sides, and the defendant was to bring this action against the plaintiff, the latter would then have the advantage of it; for where both are equally in fault, *potior est conditio defendentis.*"

Fraud, deceit, breach of trust, are general terms covering divers situations and circumstances, and seldom yield to definition or limitation; in other words, the facts differ in every case, but the principle remains the same. Thus, an agreement to divide the profits of a fraudulent scheme, or to carry out some object, in itself not unlawful, by means of an apparent trespass, breach of contract or

breach of trust, is unlawful and void. (Pollock on Contracts, 342; Salmond & Winfield, Contracts, p. 145; *Harrington* v. *Victoria Graving Dock Co.*, 3 Q. B. D. 549.) Where a confidential agent, having been discharged and having in his possession correspondence of his former employer, tending to show an illegal attempt to influence legislation, agrees to give to a third person half the profits arising from a sale of the correspondence to newspapers, the contract is immoral and will not be enforced by the courts, even though the illegality be not pleaded. Such a contract is opposed to good morals and sound public policy. (*Barry* v. *Mulhall*, 162 App. Div. 749.) See the same principle applied in *Woodstock Iron Co.* v. *Richmond & Danville Extension Co.* (129 U. S. 643); *Gray* v. *Hook* (4 N. Y. 449); *Arnot* v. *Pittston & Elmira Coal Co.* (68 N. Y. 558). A seller cannot recover the price of goods sold where he has paid a commission to an agent of the purchaser (*Sirkin* v. *Fourteenth Street Store*, 124 App. Div. 384); neither could the agent recover the commission, even at common law and before the enactment of section 384-r of the Penal Law (now § 439). (*Harrington* v. *Victoria Graving Dock Co.*, 3 Q. B. D. 549.)

The basis for such decisions is the immorality of such agreements and the policy of the State against enforcing them. The betrayal of trust or confidence, the obtaining of secrets by trick and deceit, cannot form the basis of a contract to pay for such immoral acts. The public policy of this State, as gathered from the decisions, insists upon fair dealing and honest transactions, for the law does not aid in fraud and deceit. (See, further, *Materne* v. *Horwitz*, 101 N. Y. 469; *Ridgely* v. *Keene*, 134 App. Div. 647; *Rhodes* v. *Malta Vita Pure Food Co.*, 149 Mich. 235; *Driver* v. *Smith*, 89 N. J. Eq. 339.)

The defense, as pleaded, brings the plaintiff under the condemnation of this law. Trusted upon his promise not to give out the news of the air exploration undertaken

as a scientific adventure, he agreed to breach the confidence reposed in him, and reveal the secrets to others for pay. The law leaves the plaintiff to be judged by his own standards; his complaint that the defendant treated him as he treated others falls upon deaf ears; the law is silent; it has nothing to say.

The order appealed from should be affirmed, and the question certified answered in the affirmative.

LEHMAN, J. (concurring in result). We must assume upon this appeal that the allegations of the answer are true; we may not draw from these allegations any inference of fact which does not follow from them as a necessary and irrefutable conclusion. It may be true that the defendant at the time it made the contract knew of the terms and conditions of the plaintiff's contract of passage on the *Graf Zeppelin*, and conspired with the plaintiff to avail itself of expected benefits from that contract and to disregard the restrictive conditions without which those benefits could not be obtained. If the defendant had alleged knowledge of that contract, then upon proof of facts from which knowledge might be inferred a trial court might find a wrongful conspiracy. The court may consider upon a motion for judgment on the pleadings only the allegations of the pleadings, and may not make any findings of fact to• supplement these allegations, particularly where, as in this case, the pleader has carefully refrained from alleging that it is a party to an alleged wrong against a third person. (*de Cordova* v. *Sanville*, 165 App. Div. 128; revd. on dissenting opinion of INGRAHAM, J., 214 N. Y. 662.) The questions presented here are whether the plaintiff has wronged the third party through the performance of his contract with the defendant and whether the defendant, who has, even though innocently, obtained benefits flowing from such wrong, must pay to the wrongdoer the stipulated compensation for such benefits.

General duties imposed by the statute or common law restrict at many points the freedom of the individual. These duties have their roots in some public policy of the State, and the same public policy out of which they arise refuses to sanction any contract or act in breach of such duties. Additional duties not rooted in any public policy may be assumed by the individual through voluntary contract. Such duties are narrow. They are limited by contract and are owed only to parties to the contract, and concern these parties rather than the State. The courts grant redress for failure to perform a contractual duty through award of damages and in some cases may decree specific performance of a contractual obligation; but denial of the benefit which would be derived from performance of a contractual obligation voluntarily assumed concerns the public policy of the State remotely, if at all. At least until the present time, the courts of this State have not held that a breach of such obligation in itself contravenes the public policy of the State or carries with it other consequences than liability for damages for breach of contract.

The situation may be different where from relations arising out of the contract the law imposes a duty upon one party more general than the duty assumed by contract. The plaintiff could not obtain passage upon the *Graf Zeppelin* except by concealing himself as a stowaway upon the dirigible or entering into a contract for passage upon terms and conditions acceptable to those in charge. If he had obtained passage by concealment he would not have been under any *contractual* duty to refrain from giving out reports of the passage. None the less the giving out of such reports would have constituted an additional wrong to those in charge of the *Zeppelin* for which he would have been liable. The situation is not materially different because he chose to go on the dirigible as a passenger, accepting the conditions and restrictions attached to his status. Failure to abide by those condi-

tions was more than the denial of a stipulated benefit. He used the contract to obtain a benefit for himself. The restrictions were imposed to prevent the plaintiff from availing himself of that benefit in a manner which might work injury to the party that furnished the transportation. Though the State imposes no duty upon a passenger to refrain from sending reports of the passage, it does impose a general duty upon all to refrain from doing willful injury to others. Exceptions to the general rule are difficult to formulate and classify, but the rule itself is firmly established in the public policy of the State. " At common law there was a cause of action whenever one person did damage to another wilfully and intentionally, and without just cause and excuse." (*Skinner & Co.* v. *Shew & Co.*, [1893] 1 Ch. 413.) " Nor does the mere fact that a wilful injury does not fall within the four corners of some known form of action seem to be included in any natural meaning of ' just cause or excuse.' " (Pollock on the Law of Torts [13th ed.], p. 22.) The problem here is whether, in the circumstances arising from the contract of passage, the law imposes a general duty upon a person, in the situation of the plaintiff, to refrain from injuring the parties controlling the *Graf Zeppelin*, by using the benefit derived from his contract with them and disregarding the restrictions imposed by that contract for the very purpose of avoiding such injury.

That problem should not be complicated by questions of the form of action for breach of such duty or of whether the narrow contractual duty supersedes the more general duty, if it exists. Determination of public policy must rest upon broad principles. If the plaintiff is seeking to recover compensation for an act which constitutes a breach of a general duty to refrain from willful, intentional injury to another without just cause or excuse, then public policy must deny him recovery. The public policy of the State is no less outraged by willful injury caused to another by the act of the plaintiff, though the defend-

ant was not a party to a conspiracy, and the wrong to the injured party and the State is not mitigated by the fact that the instrument of injury was a contract.

In considering distinctions between a narrow contractual duty and a general common-law duty, this court, through CARDOZO, Ch. J., has said: " If conduct has gone forward to such a stage that inaction would commonly result, not negatively merely in withholding a benefit, but positively or actively in working an injury, there exists a relation out of which arises a duty to go forward. * * * The query always is whether the putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm, or has stopped where inaction is at most a refusal to become an instrument for good." (*Moch Co.* v. *Rensselaer Water Co.*, 247 N. Y. 160, 167.) There we considered a general liability in tort to any person injured by failure to perform a contract. Here we are considering whether the wrong to a party to a contract arises solely from the contract. In the final analysis the determinative factor in both cases is whether performance of the contract has advanced to a point where refusal or failure to go further launches an instrument of injury.

Doubtless matters of degree may often enter into the final determination. The test proposed in *Moch Co.* v. *Rensselaer Water Co.* (*supra*) may not always be applicable. Perhaps eventually the more elastic rule may be evolved that a breach of contract is against public policy whenever it shocks the conscience of the court and falls below the general moral standards of business affairs. Even now the law has evolved at least to the point where on grounds of public policy it should refuse to a suitor all remedy upon a contract which could be performed only by the suitor's using a contract made with a third party as an instrument of injury to the third party.

In such cases the performance of the contract between the plaintiff and the defendant is possible only through

performance, partial or complete, of an earlier contract by a third party, and such performance by the third party could be obtained only upon the assumption that the plaintiff would on his part comply with the conditions upon which performance by the third party could be required. If at the time when such performance was rendered, the plaintiff had already entered into a contract which could be performed only by repudiation of those conditions, then it may be said that there was fraudulent concealment. (See *Roberts* v. *Criss*, 266 Fed. Rep. 296; *Foley Mfg. Co.* v. *Sierra Nevada Lumber Co.*, 172 Fed. Rep. 197.) Nothing more need be decided in this case than that a contract is against public policy where performance is possible only through inducement to a third party to proceed with the performance of another contract by fraudulent concealment of the fact that the other party to that contract intends to repudiate the terms and conditions upon which that performance is rendered; thus causing intentional injury to the third party. Any broader rule indicated in this opinion is intended only as a warning that other contracts or acts, in breach of contracts made with third parties, may similarly outrage public policy. The contract in suit may have been made before the contract of passage on the *Graf Zeppelin*, yet performance of the contract in suit could be made only through fraudulent concealment of the fact that the plaintiff would repudiate the stipulations of the contract of passage. The injury might be no less, and the breach of duty analogous if, after the earlier contract was performed wholly or in part by one party, the other party causes intentional injury by repudiation of the conditions which he agreed to observe in order to give assurance against such injury. Disregard of a contractual duty after performance of the contract has been begun may be a source of injury to the other party. The contract itself may fashion the instrument by which such harm is wrought. Where that instrument is used

to cause injury willfully, intentionally and without just cause or excuse, the wrong is more than failure to perform a contractual duty, it constitutes a breach of a general duty imposed by law.

O'BRIEN and CROUCH, JJ., concur with HUBBS, J.; POUND, Ch. J., CRANE and LEHMAN, JJ., concur in result in separate opinions; KELLOGG, J., not sitting.

Order affirmed, etc.