THE SMITH-LUSTIG PAPER BOX MANUFACTURING COMPANY, PETI-
TIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109317.   Promulgated January 26, 1943.

*Philip Lustig* (*an officer*), for the petitioner.
*Lawrence R. Bloomenthal, Esq.*, for the respondent.

504

**OPINION.**

DISNEY, *Judge:* In 1938 the Reconstruction Finance Corporation, in making a loan to the petitioner, by contract limited the petitioner's right to pay compensation to its president, S. A. Smith, and vice president, M. J. Lustig, to $4,000 for each; for a closing agreement was subject to the terms of a resolution passed by the Reconstruction Finance Corporation, so limiting compensation to be paid. Another term of the resolution entering into the contract was a guaranty by Smith and Lustig. The Commissioner determined the deficiency by allowing in each of the taxable years deduction for $4,000 compensation to each of such officers, but denied a claim of deduction of $6,000 for each, made because that amount was set as compensation by corporate resolution, though not paid in full until after the taxable years. Each officer actually was paid $4,569.84 compensation in 1938 and $3,900–$4,000 in 1939. The burden is upon the petitioner to show error. The contract with the Reconstruction Finance Corporation was executed by Lustig for the corporation, and it is not shown that Smith had no knowledge of its terms. The contrary appears, since he was not only president of the corporation, but guarantor on the contract. It is clear, therefore, that, regardless of the form of the

resolution of the petitioner's directors, relied upon by the petitioner (which was on the accrual basis) as a contract rendering accruable $6,000 compensation to each officer, such resolution is subject to the agreement with the Reconstruction Finance Corporation. In *Cotton States Fertilizer Co.*, 47 B. T. A. 748, we considered a situation parallel to that here involved, and held that the right to accrue compensation was not accruable because contingent upon payment of a loan from the Reconstruction Finance Corporation, or its consent. Though the provisions setting forth the contingency there were more specific than we here find, nevertheless it is plain that breach of contract with the Reconstruction Finance Corporation was involved in this matter in the incurring by the petitioner of liability to Smith and Lustig for more than $4,000 compensation each per year.

Section 576 of the Restatement of Contracts provides: "A bargain, the making or performance of which involves breach of a contract with a third person, is illegal." The first sentence of the comment immediately following the statement of the above rule is as follows: "a. Since breach of contract is a legal wrong, a bargain that requires for its performance breach of a contract with another, is opposed to public policy."

Professor Williston in his treatise on contracts, revised edition, at section 1738, says:

The Restatement of Contracts and recent decisions declare illegal a bargain necessarily involving a breach of a previous contract with another party or tending to induce such wrongful non-performance. The law on this subject is in the process of development. But there is authority that a bargain to buy goods which to the buyer's knowledge the seller was under contract to sell to another is illegal and unenforceable. A few courts have upheld the second contract where the purchaser had not induced it, but this distinction seems ill-founded since bad faith exists from entering into the second contract with knowledge of the first and the wrongdoer would hardly need more encouragement than the knowledge of the availability of a ready market despite his breach. Collusion under these circumstances would certainly be promoted. * * *

The rule as laid down in the Restatement of Contracts is apparently broad enough in its terms to cover situations where the party entering into the second contract involving the breach of another contract is ignorant of that circumstance. Professor Williston's Discussion, however, seems to be limited to cases where knowledge of the former contract exists. Knowledge in Lustig is shown by the record, and lack of it as to Smith is not shown.

In *Roberts* v. *Criss*, 266 Fed. 296 (C. C. A. 2d Cir.), plaintiffs had entered into a contract with defendant's testator by which the latter obligated himself to secure to the plaintiffs the benefits to be derived from his seat on the New York Stock Exchange. The agreement was in violation of the Exchange rules, by which the decedent had agreed

to be bound when he was admitted to membership. The court denied recovery to plaintiffs in their action for breach of their contract by the decedent. The court in part said:

The courts do not aid the parties to illegal agreements. If any principle of law is settled it is that a party to an illegal undertaking cannot come into a court either of law or equity and ask to have his illegal contract carried out * * * It makes no difference whether the contract has been executed, or remains still executory. The defense of illegality may be set up, not as a protection to defendant, but as a disability in the plaintiff. * * *

To the same general effect is *Reiner* v. *North American Newspaper Alliance*, 259 N. Y. 250; 181 N. E. 561.

Any action brought by Smith or Lustig for recovery of salary in excess of $4,000 would seem to fall squarely within the doctrine of the foregoing cases and authorities. Petitioner's agreement to incur liability for salaries exceeding $4,000, then, is illegal and unenforceable. There is, therefore, no properly accruable liability for the salaries in question in excess of that amount, for the liability is contingent upon exercise of the enforceable rights of the Reconstruction Finance Corporation until the discharge of the prior contract with it, and contingent upon any defense of unenforceability, by either party to the contract. Accrual above $4,000 was therefore not permissible. In the light of this conclusion, we find it unnecessary to decide whether the resolution to credit the salary allowed for 1938 above $4,000 to each officer, to unearned surplus, prevents accrual under *Stern-Slegman-Prins Co.* v. *Commissioner*, 79 Fed. (2d) 289.

The petitioner argues, however, that the contract was not made until October 20, 1938, and that it was not retroactive, therefore not effective upon the entire taxable year. We think the argument does not help the petitioner. Even on that theory petitioner must show that the amount sought as deduction by way of accrual was accrued *prior* to October 20, 1938, the date of the contract. That showing has not been made. Not only does the record indicate that the resolution depended on for accrual antedated the contract by only five days, but it also indicates that up to that time salaries were being paid, to an extent not known. Therefore it is not shown that any of the $2,000 was accrued, instead of paid, prior to the contract. Since each officer, sometime during the year, was paid $4,569.84, since the salary of each up to "around July" was $100 per week, and the Reconstruction Finance Corporation suggested a limitation to $75 a week thereafter, it is clear that no proof is made that the accrual was prior to the contract, but that on the contrary it appears, at least largely, to have followed.

Contrary to the arrangement with the Reconstruction Finance Corporation, the petitioner did, as above appears, actually pay $4,569.84 in 1938 as salary to each of the two officers. No suggestion is made

that the Reconstruction Finance Corporation objected. We conclude and hold that the petitioner is entitled to deduction, for 1938, of $4,569.84 for each of the two officers. There was neither payment nor permissible accrual above $4,000 to each officer in 1939, therefore no deduction above that amount is approved for that year.

*Decision will be entered under Rule 50.*