Buffalo Shook Company, Inc. v. Commissioner.
Buffalo Shook Co. v. Commissioner
Docket No. 26257.
United States Tax Court
1951 Tax Ct. Memo LEXIS 119; 10 T.C.M. (CCH) 820; T.C.M. (RIA) 51262; August 29, 1951
*119 1. During the years 1943 and 1944, petitioner's board of directors authorized a salary of $12,000 a year for petitioner's president. In 1943 the salary stabilization authorities allowed only $11,000. In each of the years 1943 and 1944, petitioner paid its president only the $11,000 allowed. In 1945 petitioner's board of directors authorized the payment of $2,000 to petitioner's president as additional compensation for services rendered in 1943 and 1944. The payment was made in 1945 after salary stabilization restrictions were relaxed. Held, the $2,000 is deductible as an ordinary and necessary business expense in 1945. Lucas v. Ox Fibre Brush Co., 281 U.S. 115. 2. In 1945 petitioner filed its capital stock tax return for the period July 1, 1944 to June 30, 1945 and paid the tax due. Held, the capital stock tax liability accrued in the year the return was filed. Tennessee Consolidated Coal Co., 15 T.C. 424, followed. *120 William T. Hodge, Esq., c/o Leach Calkins & Scott, Mutual Bldg., Richmond, Va., for the petitioner. Sanford M. Stoddard, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion For the taxable year 1945, respondent has determined a deficiency in petitioner's excess profits tax liability in the amount of $10,436.23. Petitioner contests that portion of the deficiency arising from respondent's disallowance of $2,000 of the $14,000 deducted as compensation for officers, and his disallowance of the sum of $500 deducted in 1945 as capital stock tax. Findings of Fact Petitioner is a manufacturing corporation with principal office and place of business at Farmville, Virginia. At all times pertinent to this controversy, petitioner kept its books and records and reported its income *121 on the accrual basis. Its income and declared value excess profits tax return for the taxable year ended December 31, 1945, was filed with the Collector of Internal Revenue for the District of Virginia, at Richmond, Virginia. During the years 1943 through 1945, petitioner's officers and directors were as follows: F. H. Hanbury, Sr., hereinafter refered to as Hanbury, was president, treasurer, and a director. His son, F. H. Hanbury, Jr., was vice-president and a director. Dr. M. K. Humphries, Jr., was secretary and a director. During the years 1943 to 1945, the corporation had 250 shares of stock out-standing. Hanbury owned 124 shares; his son, F. H. Hanbury, Jr., owned one share; and the remaining shares were held by Dr. Humphries as representative of the estate of Hanbury's former partner. From 1943 to November, 1945, Hanbury was the only executive or director active in the management of the business. His son was absent due to military service and did not return until November, 1945. Prior to 1943, the son received a salary of $4,000 a year. No salary was paid to him during his absence. During this period, Hanbury devoted his full time to the management of the business, working *122 15 to 18 hours a day, six days a week, without vacations. He had no other business interests occupying his time. He had no managerial assistants and no clerical employees other than two part-time bookkeepers. Hanbury had served the petitioner in the capacity of president and treasurer for some years prior to the taxable year. In 1940, 1941, and 1942 his salary was $10,000 and in prior years it varied from $3,700 in 1935 to $7,200 in 1939. On March 13, 1943, petitioner's board of directors authorized a salary of $12,000 for Hanbury for the year 1943. In an application addressed to the Salary Stabilization Unit of the Bureau of Internal Revenue. dated July 1, 1943, Hanbury, on behalf of petitioner, sought approval of the proposed increase in his salary from $10,000 to $12,000 for the year 1943. The Salary Stabilization Unit approved a salary of only $11,000 for 1943. Petitioner was informed of this ruling by a letter which referred to the petitioner's right to protest and request a review. No protest was made. Petitioner paid Hanbury a salary of $11,000 for 1943. On March 4, 1944, petitioner's board of directors authorized a salary of $12,000 for Hanbury for 1944. This salary *123 increase was not submitted to the salary stabilization authorities for approval because of Hanbury's belief that such a request would have been useless. The petitioner paid Hanbury a salary of $11,000 for 1944. No salary in excess of the $11,000 paid to its president in each of the years 1943 and 1944 was accrued or otherwise entered on petitioner's books in those years. On March 24, 1945, petitioner's board of directors authorized a salary of $12,000 for Hanbury for the year 1945 and agreed to pay him an additional $1,000 for each of the years 1943 and 1944 as compensation for services rendered in those years. This increase was in anticipation and conditioned on the relaxing of salary stabilization restrictions in that year so as to permit such payment. No mention of the additional $2,000 was made in the resolution authorizing the salary of $12,000 for 1945. The directors thought it was unnecessary to do so because of their prior authorization of $1,000 in excess of the amounts paid in the years 1943 and 1944. The total sum of $14,000 was paid to Hanbury in 1945. The $2,000 additional compensation for the years 1943 and 1944 was paid after the salary stabilization restrictions *124 were relaxed. The board of directors intended the increases in salary authorized by them in 1943 and 1944 to be contingent on such increases being lawful under the salary stabilization laws. They did not intend to obligate the corporation to pay Hanbury at some future date any amount in excess of the $11,000 actually paid to him in those years. Petitioner's operations during 1943 through 1945 consisted of cutting standing timber, hauling the timber to its mills located in Farmville and Amelia County, Virginia, and processing the timber into box shooks and tobacco hogsheads. During this period petitioner had approximately 80 employees. The petitioner's gross sales, as shown on its Federal income tax returns for 1943, 1944, and 1945, total $190,739.70, $215,342.72 and $187,011.65, respectively. During these years, the salary paid to Hanbury was the only executive or managerial salary paid by petitioner except for $450 paid to F. H. Hanbury, Jr., at the end of 1945 after he returned from military service. For the years 1943 through 1945, office expenses were $982.23, $670.51 and $646.15, respectively. In its corporation income and declared value excess profits tax return for 1945, *125 petitioner deducted the sum of $14,000 for compensation paid to Hanbury. The sum of $12,000 paid to Hanbury as salary for the year 1945 was reasonable compensation for services rendered in that year and the additional $2,000 paid to Hanbury in 1945 represented reasonable additional compensation for services rendered in the years 1943 and 1944. In computing and reporting its net taxable income for its taxable year January 1 to December 31, 1945, for Federal income and excess profits tax purposes, petitioner deducted the sum of $500 as taxes paid, reprepresenting its Federal capital stock tax liability for the capital stock tax period July 1, 1944 to June 30, 1945. Payment of the $500 capital stock tax so deducted was made in petitioner's taxable year January 1 to December 31, 1945. In computing and reporting its net taxable income for its taxable year January 1 to December 31, 1944 for Federal income and excess profits tax purposes, petitioner deducted the sum of $312.50 as taxes paid, representing its Federal capital stock tax liability for the capital stock tax period July 1, 1943 to June 30, 1944. Payment of the $312.50 capital stock tax so deducted was made in petitioner's *126 taxable year January 1 to December 31, 1944. In determining petitioner's Federal income tax liability for its taxable years 1941 to 1944, inclusive, respondent made no adjustment to the return on account of the deduction claimed for Federal capital stock tax paid. Opinion ARUNDELL, Judge: The first question before us is whether the petitioner may deduct in 1945 the sum paid in that year to Hanbury as additional compensation for services rendered in 1943 and 1944. The petitioner relies on Lucas v. Ox Fibre Brush Co., 281 U.S. 115, in which the Supreme Court held that additional compensation for services rendered in prior years is deductible in the year paid if there was no "prior agreement or legal obligation to pay the additional compensation". Respondent contends that the case of Lucas v. Ox Fibre Brush Co. is not applicable because in the instant case there was a prior agreement to pay the additional sum. We think it is clear that the agreement referred to in the quoted remark is one that would justify an accrual of the additional compensation prior to the year in which paid, that is, one which is legally binding on the parties concerned. That was not the nature *127 of the agreement to which respondent refers. The board of directors did not and could not enter into a binding agreement to pay Hanbury the additional compensation. Such an increase was disallowed by the ruling of the salary stabilization authorities. Nor could such an agreement have been enforced by Hanbury. The board of directors merely authorized an increase in 1943 and 1944 on the contingency that such increase would be permissible under the then existing salary stabilization laws. Such an authorization or agreement does not render inapplicable the rule of Lucas v. Ox Fibre Brush Co., supra.See Atlumor Mfg. Co., 12 T.C. 949. We, therefore, hold that the sum of $2,000 paid to Hanbury as additional compensation for services rendered in 1943 and 1944 is deductible in the year paid. Lucas v. Ox Fibre Brush Co., supra. Nor do we find any merit in respondent's suggestion that perhaps the entire salary authorized by the board of directors in 1943 and 1944 was accruable and deductible in those respective years rather than in 1945, since petitioner has not shown that the salary stabilization authorities would not have approved the entire authorized *128 salary had petitioner protested the ruling and appealed. We need not speculate as to what may have occurred if petitioner had pursued such remedies. The fact remains that petitioner accepted the ruling and was legally prohibited from paying more than $11,000 of the $12,000 authorized. 56 Stat. 765-768, 50 U.S.C.A. App., sections 961-971. Under such circumstances, the disallowed sum did not accrue as an expense in 1943 and 1944. Smith-Lustig Paper Box Mfg. Co., 1 T.C. 503. Finally, the fact that the 1945 agreement of the board of directors authorizing the additional compensation was not put into a formal corporate resolution does not in itself furnish sufficient basis for the denial of the deduction. It is clear from the facts as found that the directors agreed that Hanbury should receive the additional compensation in 1945 and informally authorized the petitioner to pay it. Such an informal authorization was sufficient authority for the payment. Cf. Brampton Woolen Co. v. Commissioner, 45 Fed. (2d) 327, reversing 18 B.T.A. 1075; Reub Isaacs & Co., Inc., 1 B.T.A. 45. Benz Brothers Co., 20 B.T.A. 1214. *129 The next question to be decided is whether the petitioner may deduct the sum of $500 paid in 1945 for capital stock tax incurred for the period July 1, 1944 to June 30, 1945. Respondent opposes this deduction on the ground that the liability accrued in 1944. He argues that the liability for Federal capital stock tax accrues on the first day of the capital stock tax period, and relies on William C. Atwater & Co., 10 T.C. 218. This argument was made and answered adversely to respondent in our recent decision in TennesseeConsolidated Coal Co., 15 T.C. 424, wherein we explained that because of the amendment of the law on capital stock tax on October 21, 1942, by section 301 of the Revenue Act of 1942, [1] the capital stock tax for years subsequent to the effective date of the amendment does not accrue until the year in which a capital stock tax return is filed. The tax is accrued at this later date because under this amendment, at the time the taxpayer files its capital stock tax return, it has the choice of declaring its capital stock at zero and paying no tax, or declaring any other value it chooses. The statutory expression that declared value shall be *130 the value declared by the corporation is emphasized by the Treasury Regulations pertinent to this Code provision.[2] Hence, the amount of the capital stock tax remains contingent until the filing of the capital stock tax return. Since the return for the period covering July 1, 1944 to June 30, 1945 was filed in 1945, the tax paid pursuant thereto is deductible in that year. TennesseeConsolidated Coal Co., supra.
*131 Decision will be entered under Rule 50. Footnotes
1. SEC. 301. CAPITAL STOCK TAX. (a) Technical Amendment. - Section 1200 (a) and (b) (relating to rate of capital stock tax) are amended by striking out the word "adjusted" wherever occurring therein. (b) Annual Declaration of Value. - Section 1202 (relating to declaration of value) is amended to read as follows: "SEC. 1202. DECLARED VALUE. (a) Declaration of Value. - The declared value shall be the value as declared by the corporation in its return for the year (which declaration of value cannot be amended). The value declared by the corporation in its return shall be as of the close of its last income-tax taxable year ending with or prior to the close of the capital stock tax taxable year * * *. * * *
(d) Prior Returns Effective. - If a return for the year ended June 30, 1942, is filed under Chapter 6 of the Internal Revenue Code, without regard to the amendment thereof as made by this Act, the adjusted declared value reported by the corporation on such return (whether or not correct) shall constitute the declared value for the purposes of such Chapter 6, as amended by this Act, unless a different value is declared on a subsequent return for such year received within the prescribed filing period. (e) Effective Date. - This section shall be effective only with respect to the year ended June 30, 1942, and succeeding years." ↩
2. SEC. 137.33. DECLARED VALUE. - In its return for each year, a corporation must declare a definite and unqualified value for its capital stock. * * * A corporation may exercise unrestricted judgment and discretion in determining the value to be declared for its capital stock on a return for any year. In making such declaration, the corporation is not bound by any previous declaration of value. The value shall be declared as of the close of the last income-tax taxable year ending with or prior to the close of the capital stock tax taxable year, * * *.↩