**PAGODA THEATRE, INC., Plaintiff,**

v.

**GOLDEN HARVEST (H.K.) LTD. et al., Defendants.**

**No. 73 Civ. 2616.**

United States District Court, S. D. New York.

Oct. 4, 1973.

Corner, Finn, Cuomo & Charles, Brooklyn, N. Y., for plaintiff; Mario Matthew Cuomo, Jack S. Kannry, Brooklyn, N. Y., of counsel.

Thal & Youtt, New York City, for defendant Hallmark Releasing Corp.; Harry E. Youtt, New York City, of counsel.

WYATT, District Judge.

This is a motion by defendant Hallmark Releasing, Inc. (Hallmark) for an order dismissing the complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). Affidavits are submitted in support of the motion and in opposition. The motion therefore under Fed.R.Civ.P. 12(b) is to be treated as one for summary judgment (Fed.R.Civ.P. 56). The motion is denied.

The facts are not really in dispute and for purposes of this motion the averments of the complaint are accepted as true by movant. The facts are relatively simple.

Plaintiff (Pagoda) is an exhibitor and distributor of movies.

Defendant Golden Harvest (H.K.) Ltd. (Harvest) produces movies in Hong Kong.

On November 12, 1971, Pagoda and Harvest made an agreement under which Harvest agreed to sell Pagoda ten films "for exclusive showing rights in the United States . . . limited to five years from delivery date . . ." (complaint, para. 4).

Harvest delivered to Pagoda a film "The Lady Whirlwind" (Lady) on August 23, 1972, and Pagoda thus had exclusive showing rights to Lady for five years from that date.

Harvest at some time in 1972 and in breach of its agreement with Pagoda granted to defendant Cathay Film Distributors Private Limited (Cathay) exclusive showing rights to Lady in the United States and elsewhere.

Under date of April 9, 1973, Cathay and Hallmark made a written agreement under which Cathay warranted that it was the owner of Lady and had "sole and exclusive rights for exhibition" of Lady. Cathay then granted to Hallmark "the exclusive right and license to exhibit" Lady in the United States for seven years. Hallmark paid in April 1973 the sum of $45,000 for its rights; this sum is referred to at one point in the agreement as "royalty". Hallmark among other things promised to return or destroy all prints of Lady at the expiry of the agreement.

Hallmark formed some sort of association with defendant American International Pictures, Inc. and began exhibiting Lady on May 2, 1973 in New York.

Pagoda promptly notified Hallmark and the other defendants that the contract of Pagoda with Harvest "had been thereby violated" and demanded that they cease exhibition of Lady "in derogation of plaintiff's contractually acquired rights and in violation of law". This notice was on May 3, 1973.

Hallmark rejected the notice and demand of Pagoda.

Exhibition of Lady by defendants continued.

This action was commenced on June 12, 1973. Jurisdiction is asserted on the basis of diversity of citizenship (28 U. S.C. § 1332) and there appears to be such diversity.

After commencement of the action, Hallmark continued to exhibit Lady in New York and elsewhere.

The complaint contains two claims against Hallmark, one in count V and one in count VI. The claims are based on the facts as recited above, about which there seems no dispute. The claim in count V is for money damages and apparently for an injunction. The claim in count VI is for an accounting of profits made by Hallmark and two other defendants from exhibition of Lady.

The arguments of movant for summary judgment cannot be accepted.

The claim of plaintiff is not one for inducing a breach of contract by Harvest and it seems clear that movant did not induce any breach of contract by anybody.

For all that appears, the *making* by movant of its agreement with Cathay was in good faith and no claim can be made by Pagoda based on that agreement.

But on and after May 3, 1973, Hallmark was on notice that it had secured no valid rights from Cathay to exhibit Lady, this because neither Cathay nor Harvest could grant any exhibition rights since there was an earlier grant to Pagoda of exclusive exhibition rights. If Hallmark, knowing of the prior grant to Pagoda, goes ahead and exhibits Lady under the invalid grant from Cathay, Hallmark would appear liable to Pagoda.

The closest case to that at bar which I have found is Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc., 202 F.2d 866 (2d Cir.), cert. denied, 346 U.S. 816, 74 S.Ct. 26, 98 L.Ed. 343 (1953).

*Haelan* involved competing makers of chewing gum, Haelan and Topps. Haelan made contracts with famous baseball players for the *exclusive* use during a stated term of the photographs of the

players; the players also agreed that during the term of their agreements with Haelan they would not grant any similar right to any other maker of chewing gum. Thereafter these players were induced by two companies, Players Co. and Russell Co., to authorize Topps to use their photographs in connection with the sale by Topps of its chewing gum. Players and Russell knew of the contracts with Haelan and acted deliberately. Players was an agent of Topps but Russell acted independently and assigned to Topps the contracts it had obtained.

The Court referred to the tort of wrongfully inducing a breach of contract and ruled: "Since Players acted as defendant's agent, defendant is liable for any breach of plaintiff's contracts thus induced by Players". This part of the decision is not relevant here because on the facts Hallmark cannot be liable for inducing a breach by Harvest of its contract with Pagoda.

The Court ruled that as to the breach of contracts induced by Russell, defendant Topps was "not liable for any breach so induced; nor did there arise such a liability against defendant [Topps] for such an induced breach when defendant became the assignee of one of those Russell contracts."

As to the Russell contracts, therefore, Topps was in the same situation as Hallmark here.

The Court in the *Haelan* decision then went on to find that Topps, though not liable for inducing a breach of contract through the acts of Russell, was nevertheless liable to Haelan if it, Topps, knowing of the exclusive contracts with Haelan, used the photographs of the relevant players. This part of the decision seems highly relevant to the case at bar and reads as follows (202 F.2d at 869):

"We said above that defendant was not liable for a breach of any of plaintiff's contracts induced by Russell, and did not become thus liable (for an induced breach) when there was assigned to defendant a contract between Russell and a ballplayer, although Russell, in making that contract, knowingly induced a breach of a contract with plaintiff. But plaintiff, in its capacity as exclusive grantee of a player's 'right of publicity,' has a valid claim against defendant if defendant used that player's photograph during the term of plaintiff's grant and with knowledge of it. It is no defense to such a claim that defendant is the assignee of a subsequent contract between that player and Russell, purporting to make a grant to Russell or its assignees. For the prior grant to plaintiff renders that subsequent grant invalid during the period of the grant (including an exercised option) to plaintiff, but not thereafter."

Hallmark would thus be liable to Pagoda if Hallmark, knowing of Pagoda's exclusive rights, exhibited Lady. It is no defense to such a claim that Hallmark has a grant from Cathay for the prior grant to Pagoda made the subsequent grant to Hallmark invalid. Of course, Hallmark has a remedy against Cathay which in turn may have a remedy against Harvest. See also Reiner v. North American Newspaper Alliance, 259 N.Y. 250, 254, 181 N.E. 561 (1932).

▮ The argument for Hallmark that it has a defense as a purchaser for value without notice has no merit. Such a defense, applicable in some cases to specific property such as land and negotiable instruments, is not applicable here. The only thing Hallmark purported to purchase was a contract right or license to exhibit Lady. Cathay had no ability to grant such a license validly as against Pagoda. Therefore, Hallmark took nothing as against Pagoda.

The motion is in all respects denied. So ordered.