Mary Sachs v. Commissioner.
Sachs v. Commissioner
Docket Nos. 30216, 35508.
United States Tax Court
1952 Tax Ct. Memo LEXIS 107; 11 T.C.M. (CCH) 882; T.C.M. (RIA) 52256; August 20, 1952
Herman H. Krekstein, Esq., 1528 Walnut St., Philadelphia, Pa., Manuel Kraus, Esq., and Barton E. Ferst, Esq., for the petitioner. Edward Pesin, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion LEMIRE, Judge: These consolidated proceedings involve income tax deficiencies and penalty for the periods and in the amounts as follows: Year Ended
1-31
Income Tax
Penalty
1944
$47,652.77
$2,382.64
1945
20,758.97
1946
20,548.59
The issues are whether the respondent erred - 1. In disallowing the following amounts claimed as compensation to employees of the petitioner: Year Ended 1-31
Amount
1943
$12,537.21
1945
45,684.15
1946
23,006.65
2. In disallowing the amounts of $1,472.07 and $3,250 in the respective taxable years ended January 31, 1943, and 1946, representing income taxes paid by the petitioner for her brother and sisters, employees of the petitioner; 3. In disallowing certain amounts claimed by the petitioner in the taxable years ended January 31, 1943, 1944, 1945 and 1946, as traveling expenses; *109 4. In disallowing the amount of $2,066.30 for the taxable year ended January 31, 1943, for medical treatment of her brother, and employee; 5. In disallowing in the taxable year ended January 31, 1944, the amount of $1,000 paid for a membership in a golf club and the amount of $25 paid to the Lancaster Chamber of Commerce, claimed by the petitioner as business expenses; 6. In disallowing in part the amount claimed by the petitioner in the taxable year ended January 31, 1944, as a contribution to an employees' pension plan; and 7. In determining that a part of the deficiency for the taxable year ended January 31, 1944, was due to negligence and intentional disregard of rules and regulations. Findings of Fact Petitioner is an individual residing in Harrisburg, Pennsylvania, and during the taxable periods involved owned and operated women's and children's specialty shops located in Harrisburg and Lancaster, Pennsylvania, at which merchandise was sold at retail. During the taxable periods involved petitioner employed the accrual method of accounting and kept her books and filed her tax returns on the basis of a fiscal year ended January 31. The petitioner's returns for the *110 taxable periods involved were filed with the collector of internal revenue for the first district of Pennsylvania. Issue 1 In 1938 the petitioner obtained a loan from the Fulton National Bank of Lancaster, Pennsylvania, in which the Reconstruction Finance Corporation had a deferred participation. The agreement under which the loan was made provided, inter alia, that until the loan was repaid the petitioner would not, without the prior written consent of the Fulton National Bank and the RFC, increase the compensation of Hannah S. Cantor or Yetta S. Sternberg over and above the respective amounts of $4,472.36 and $4,937.76 per annum. Compensation to employees not specifically scheduled was limited to $2,400 per annum, which amount was on November 26, 1941, increased to $3,600 per annum. Compensation of Morris Sachs was not specifically scheduled. On the respective dates of April 24, 1942, May 3, 1943, and May 3, 1944, Hannah S. Cantor, Yetta S. Sternberg and Morris Sachs each individually executed agreements subordinating their respective claims against the petitioner, in the amounts specified, to the claims of the Fulton National Bank. The loan from the Fulton National Bank *111 was repaid by the petitioner on May 15, 1945. Prior to and during the taxable years involved the petitioner employed her sister, Hannah S. Cantor, as manager of several departments of the petitioner's Harrisburg store. For services rendered by Hannah S. Cantor during said periods the petitioner agreed to pay her a weekly salary and an additional amount determined by reference to the total sales of the departments she supervised. Prior to and during the taxable periods involved the petitioner employed her sister, Yetta S. Sternberg, as manager of the petitioner's store at Lancaster, Pennsylvania. For services rendered by Yetta S. Sternberg during such periods, the petitioner agreed to pay her a weekly salary and an additional amount determined by reference to the total sales of such store. Prior to and during the taxable periods involved the petitioner employed her brother, Morris Sachs, as supervisor of all physical properties connected with her store operations and as purchaser of all materials not intended for resale. For services rendered by Morris Sachs during such periods the petitioner agreed to pay him a weekly salary and an additional amount determined by reference to *112 total sales. For the taxable year ended January 31, 1943, the amount of additional compensation agreed to be paid, the dates and amounts of payment, and the amounts accrued with respect to each such employee are as follows: Additional
Amount Paid
Amount Accrued
Employee
Compensation
1-27-43
1-3143
Hannah S. Cantor
$11,149.54
$ 5,595.20
$ 5,554.34
Yetta S. Sternberg
10,511.57
3,469.34
7,042.23
Morris Sachs
6,788.76
3,472.67
3,316.09
Totals
$28,449.87
$12,537.21
$15,912.66
The above amounts accrued as of January 31, 1943, for services rendered during such fiscal year ended January 31, 1943, were paid to such three employees on April 11, 1944. In addition to the weekly salary the petitioner agreed to pay to such three employees for services rendered during the fiscal year ended January 31, 1944, the following amounts: Additional
Employee
Compensation
Hannah S. Cantor
$11,419.91
Yetta S. Sternberg
12,458.65
Morris Sachs
5,892.93
Total
$29,771.49
The above amounts of additional compensation were paid to each of the three above-named employees on April 11, 1944. Within a period of a week following April 11, 1944, Hannah *113 S. Cantor, Yetta S. Sternberg and Morris Sachs loaned to the petitioner the following amounts aggregating the totals of the two checks each received on April 11, 1944.. Employee
Amount of Checks Received
Amount Loaned
Hannah S. Cantor
$ 5,554.34
$11,419.91
$16,974.25
Yetta S. Sternberg
7,042.23
12,458.65
19,500.88
Morris Sachs
3,316.09
5,892.93
9,209.02
Total
$45,684.15 Interest was paid on such loans. For services rendered during the taxable year ended January 31, 1946, the petitioner agreed to pay and on March 14, 1946, did pay to her three key employees the following amounts: Amount
Amount
Agreed
Paid
Employee
to be Paid
3-14-46
Hannah S. Cantor
$31,917.34
$23,327.06
Yetta S. Sternberg
24,861.98
18,274.02
Morris Sachs
29,683.62
21,855.21
Totals
$86,462.94
$63,456.29
The amounts claimed by the petitioner as deductions representing additional compensation for the year ended January 31, 1946, and the amounts allowed and disallowed by the respondent, are as follows: Amount
Employee
Claimed
Allowed
Disallowed
Hannah S. Cantor
$31,917.34
$23,327.06
$ 8,590.28
Yetta S. Sternberg
24,861.98
18,274.02
6,587.96
Morris Sachs
29,683.62
21,855.21
7,828.41
Totals
$86,462.94
$63,456.29
$23,006.65
*114 In his deficiency notice the respondent's explanation for the disallowance of the above amounts is that the same were not paid within two and one-half months after the close of the taxable year. Sec. 24 (c), I.R.C.
The weekly amounts of compensation paid by the petitioner to Hannah S. Cantor, Yetta S. Sternberg and Morris Sachs for the respective fiscal years ended January 31, 1943, and 1944, were as follows: Year Ended
Year Ended
Employee
1-31-43
1-31-44
Hannah S. Cantor
$3,030.00
$3,120.00
Yetta S. Sternberg
2,992.03
3,120.00
Morris Sachs
1,735.00
2,645.00
On May 19, 1945, the petitioner paid to such three employees the following amounts: Hannah S. Cantor
$30,254.74
Yetta S. Sternberg
19,586.47
Morris Sachs
13,699.28
Total
$63,540.49
On July 1, 1946, the petitioner incorporated the business operated by her during the periods involved. At that time the petitioner issued preferred stock of the corporation to cover her indebtedness to her three employees. The amounts of indebtedness and the number of shares of preferred stock issued to each are as follows: Preferred
Employee
Indebtedness
Shares
Hannah S. Cantor
$134,662.00
1,340
Yetta S. Sternberg
57,078.84
570
Morris Sachs
47,390.08
470
*115 The petitioner did not obtain the prior written consent of the Fulton National Bank or the RFC to pay increased compensation over the amounts specified in the loan agreement. Issue 2 In March 1942 and 1946 the petitioner made payments to the collector of internal revenue on behalf of Hannah S. Cantor, Yetta S. Sternberg and Morris Sachs, in the amounts and on the dates specified as follows: Employee
Amount
Paid
Amount
Paid
Hannah S. Cantor
$631.52
3-14-42
$1,325.00
3-14-46
Yetta S. Sternberg
480.32
3-13-42
1,075.00
3-14-46
Morris Sachs
360.24
3-14-42
850.00
3-14-46
On the books of the petitioner all of the above payments were charged to an account called "Mary Sachs Withdrawals". The petitioner did not claim any deductions of such amounts on her respective tax returns for the taxable years ended January 31, 1943, and 1946. Issue 3 During the taxable years involved the petitioner was required to incur travel expenses, including transportation, lodging, meals and entertainment, for herself and certain employees in the conduct of her business. In her income tax returns for the respective taxable years in question the petitioner *116 claimed deductions of the following amounts, representing travel expenses: Year Ended 1-31
Amount
1943
$5,400.00
1944
6,800.00
1945
7,300.00
1946
9,500.00
It was the practice of the petitioner to draw checks at regular intervals which were charged to travel and entertainment. Petitioner made frequent trips to New York City to attend fashion shows and purchase merchandise. She was usually accompanied by two or more employees experienced as buyers in various departments of her stores. The petitioner paid for transportation, lodging, meals and entertainment for herself and employees accompanying her. She kept no records of the amounts actually spent for such purposes in the respective taxable years. In determining the deficiencies respondent disallowed the following amounts for the respective taxable years involved, representing travel expenses: Year Ended 1-31
Amount
1943
$1,350.00
1944
1,700.00
1945
3,325.00
1946
2,375.00
In the respective taxable years the petitioner incurred and paid in carrying on her trade or business travel expenses in the amounts as follows: Year Ended 1-31
Amount
1943
$5,400.00
1944
6,800.00
1945
7,300.00
1946
9,500.00
*117 Issue 4 During the taxable year ended January 31, 1943, the petitioner paid medical expenses of her brother, Morris Sachs, in the amount of $2,066.30. It was the practice of the petitioner to pay the medical expenses of some of her principal employees to promote employee morale. The amount was charged to an account on petitioner's books under the title, "occupancy expenses." In her tax return for the taxable year ended January 31, 1943, the petitioner claimed a deduction in the amount of $2,066.30 as a business expense. The respondent disallowed the claimed deduction on the ground that it constituted a gift. The sum of $2,066.30, representing medical expenses paid by the petitioner on behalf of Morris Sachs, constituted additional compensation and is an ordinary and necessary expense incurred and paid in the taxable year ended January 31, 1943, in carrying on the petitioner's trade or business. Issue 5 During the taxable year ended January 31, 1944, the petitioner paid the sum of $1,000 for a membership in the Blue Ridge Country Club, Inc. Some of the members of such club were customers of the petitioner and she made the "investment" with the idea that her customers would *118 buy sporting goods at her store. At that time petitioner played golf at such club. During the taxable year ended January 31, 1944, the petitioner contributed the sum of $25 to the Lancaster Chamber of Commerce. On her return for the taxable year ended January 31, 1944, petitioner claimed a deduction of the amount of $1,025 as business expenses. The petitioner's contribution of the sum of $25 to the Lancaster Chamber of Commerce in the taxable year ended January 31, 1944, constituted an ordinary and necessary expense of carrying on the petitioner's trade or business. The petitioner has failed to establish that the payment of $1,000 for a membership in the Blue Ridge Country Club in the taxable year ended January 31, 1944, constituted an ordinary and necessary expense of carrying on her trade or business. Issue 6 On or about January 19, 1944, the petitioner created a trust with the Fulton National Bank, as trustee, forming a part of an employees' pension plan, managed by an employees' pension board. The plan, as amended, was approved by the respondent as meeting the requirements of section 165 (a) of the Internal Revenue Code. The minutes of a special *119 meeting of the employees' pension board contain, inter alia, the following: "The Chairman reported that Mary Sachs has authorized the contribution of $32,000.00 to the Employees Pension Fund for the Company's fiscal year ending January 31, 1945, which has been paid or will be paid to the Trustee within sixty days from date hereof. * * *
"Mr. Harris then reported that due to the condition of the investment market it was difficult to immediately invest the Fund; that Mary Sachs was in position to use $27,000.00 of the Pension Fund, in exchange for a demand promissory note bearing four per cent (4%) interest which would constitute a lien against the assets of the Company until paid; that as and when investments of an advantageous nature presented themselves, Mary Sachs would pay off such loan; that this would give the Pension Fund an immediate investment. Whereupon, upon motion duly made and seconded, it was RESOLVED, that the Trustee be and it is authorized and directed to loan to Mary Sachs, on a demand promissory note, $27,000 of the Pension Fund at the rate of four per cent (4%) per annum; that the Secretary of the Pension Board forward a copy of this resolution to the *120 Trustee, The Fulton National Bank, Lancaster, Pennsylvania." Hannah S. Cantor was one of the seven employees on the pension board. On January 31, 1945, the petitioner paid to the trustee the sum of $5,000 and executed and delivered to the trustee her demand promissory note for $27,000 bearing interest at the rate of four per cent per annum. On May 14, 1945, the petitioner paid to the trustee the sum of $27,000, with accrued interest, in discharge of the promissory note dated January 31, 1945. On her income tax return for the taxable year ended January 31, 1945, the petitioner claimed a deduction in the amount of $32,000 as a contribution to her employees' pension trust. In determining her deficiency for 1945 the respondent disallowed the amount of $23,876.86, with the following explanation: "* * * Of the amount of $32,000.00 claimed as a deduction from gross income for the taxable year ended January 31, 1945 and alleged to represent a payment made to an employees' pension fund, $2,907.10 is disallowed as being in excess of the cost of the plan and $24,092.90 is disallowed as not having been paid within the taxable year. An amount of $3,123.14 not previously claimed is allowed. *121 The net disallowance, therefore, is $23,876.86." Issue 7 During the fiscal year ended January 31, 1944, the petitioner's business books and records were kept by Anne M. Williams, who had at that time over twenty years of experience as a bookkeeper. Sufficient books of account were kept in which all business transactions of the petitioner were recorded. During the taxable year ended January 31, 1944, as well as in the other taxable years involved, petitioner retained the firm of Harris, Hatter & Beitel, reputable certified public accountants, who made semiannual audits of her books and prepared her tax returns. In determining the deficiency for the taxable year ended January 31, 1944, the respondent added a 5 per cent negligence penalty. No part of the deficiency for the taxable year ended January 31, 1944, is due to negligence or intentional disregard of the rules and regulations. Opinion Issue 1 The first issue involves the amounts which petitioner is entitled to deduct in the respective taxable years involved as compensation for services rendered by her sisters, Hannah S. Cantor and Yetta S. Sternberg, and her brother, Morris Sachs. The reasonableness of the compensation *122 is not in issue. During the taxable years in question the petitioner operated two retail stores selling women's and children's apparel. Her business books were kept on the accrual basis of accounting for a fiscal year ending January 31. In 1938, the petitioner secured a loan from the Fulton National Bank of Lancaster, Pennsylvania, in which the Reconstruction Finance Corporation had a participating interest. The loan agreement prohibited the payment of compensation in excess of specified amounts without the prior written consent of the bank and the RFC. No such consent was obtained by the petitioner. Prior to the time of the execution of the loan agreement the petitioner had an arrangement with her two sisters and her brother providing for the payment of a weekly salary and additional compensation to be determined on the basis of certain sales. The respondent allowed the weekly salary payments but disallowed the additional compensation claimed as a deduction. The petitioner concedes that by reason of the restriction contained in the loan agreement she is not entitled to deduct the amounts of additional compensation accrued but not actually paid, but is entitled to deduct the *123 amounts actually paid in the years of payment. Smith-Lustig Paper Box Mfg. Co., 1 T.C. 503. The amount in controversy for the taxable year ended January 31, 1943, is $12,537.21. The record establishes that on January 27, 1943, the petitioner actually paid to her three top employees additional compensation, aggregating the sum of $12,537.21, for services rendered in that taxable year. Under the rationale of the Smith-Lustig case, supra, such amount constitutes a proper deduction under section 23 (a) (1) (A) of the Internal Revenue Code. The petitioner concedes that she is not entitled to any deduction for additional compensation for the taxable year ended January 31, 1944, since no payments were actually made during such year. The petitioner contends, however, that she is entitled to a deduction in the amount of $45,684.15 for the taxable year ended January 31, 1945. The amount of $45,684.15 consists of the sum of $15,912.66, accrued as of January 31, 1943, as additional compensation for services rendered during that taxable year, and the amount of $29,771.49, accrued as of January 31, 1944, as additional compensation for services rendered during *124 the taxable year ended January 31, 1944. On April 11, 1944, the petitioner paid to her three top employees amounts aggregating $45,684.15. Within approximately a week after the payment of the total amount of $45,684.15, each of the three employees returned to the petitioner, as a loan, the identical aggregate amounts of the respective payments each received on April 11, 1944. The contention of the respondent against the allowance of a deduction of the amount of $45,684.15 for the taxable year ended January 31, 1945, is that the payments made on April 11, 1944, were shams and made for the sole purpose of obtaining a tax deduction. The record in our opinion contains no evidence to indicate the payments were not bona fide. The respondent's inference is apparently drawn from the fact that the identical amounts paid were loaned to the petitioner within a very short period. We think such fact is insufficient to support the inference of bad faith, in view of the fact that there is no dispute that the amounts paid were due the employees for services actually rendered, and that interest was paid on the loans. We therefore hold that the petitioner is entitled to deduct the amount of $45,684.15 *125 for the taxable year ended January 31, 1945, as an ordinary and necessary business expense paid in such year under section 23 (a) (1) (A) of the Internal Revenue Code. The amount in controversy for the taxable year ended January 31, 1946, is $23,006.65. The amount due the petitioner's three key employees as additional compensation for services rendered during the taxable year ended January 31, 1946, is $86,462.94, which amount the petitioner claimed as a deduction for such year. The respondent allowed the amount of $63,456.29 paid by the petitioner on March 14, 1945, and disallowed the balance of $23,006.65 as not having been paid within two and one-half months after the close of the taxable year. Section 24 (c) of the Internal Revenue Code provides that no deduction shall be allowed under section 23 (a) relating to expenses incurred where there are present the three conditions specified in the statute. [1] The burden is upon the petitioner to establish the nonexistence of the conditions prescribed in section 24 (c). We think the petitioner has failed to carry her burden. The loan agreement expired on May 15, 1945, and there was no restriction *126 against the accrual or payment of the additional compensation due for services rendered during the taxable year ended January 31, 1946. Petitioner makes no claim of any payments subsequent to March 14, 1946, except perhaps by the issuance of certain shares of preferred stock to such three employees on the incorporation of the petitioner's business on July 1, 1946, more than two and one-half months after the close of the taxable year. The key employees were two sisters and a brother of petitioner. *127 The record establishes that on May 19, 1945, the petitioner paid to her three key employees the sum of $63,540.49. That amount was not claimed as a deduction on petitioner's return for the taxable year ended January 31, 1946. The petitioner argues that we should treat the amount of $23,006.65, disallowed by the respondent, as having been paid out of the May 19 payments of $63,504.49. This we decline to do. The record is silent as to the purposes for which these May 19, 1945, payments were made. The payments may have been to discharge "indebtedness" due petitioner's three key employees for services rendered in years prior to the taxable years involved which were claimed by the petitioner and allowed as deductions in such prior years. Furthermore, the payments may represent repayments of loans made to petitioner by her three key employees in years prior and in the taxable years in question. The record shows that petitioner was indebted to her three key employees in substantial amounts as evidenced by their agreements executed in April 1942, May 1943, and May 1944, subordinating their respective claims to those of the Fulton National Bank. This record is devoid of any evidence connecting *128 the May 19, 1945, payments to services rendered by the three key employees in the year ended January 31, 1946. We hold that the respondent did not err in disallowing a deduction of the amount of $23,006.65 in the taxable year ended January 31, 1946, representing additional compensation to petitioner's key employees. Issue 2 This issue presents the question whether the petitioner is entitled to deduct the amounts of $1,472.07 and $3,250 in the respective taxable years ended January 31, 1943, and 1946, representing payments made on March 14, 1942, and March 14, 1946, to the collector of internal revenue on account of income taxes for her brother and two sisters, key employees of the petitioner. These payments were charged on petitioner's books to an account called "Mary Sachs Withdrawals." These amounts were not claimed as deductions on the petitioner's income tax returns for the respective periods involved. The respondent contends the payments were gifts. The petitioner testified they were not gifts, but constituted additional compensation for services rendered by the employees for whose benefit they were paid. Accepting the testimony of the petitioner that the payments *129 were not gifts but intended to be additional compensation, we hold the amount of $1,472.07, paid in March 1942, and the amount of $3,250, paid in March 1946, constitute ordinary and necessary business expenses paid by the petitioner and are properly deductible in the respective taxable years ended January 31, 1943, and 1946. Issue 3 This issue presents the question of the amounts the petitioner is entitled to deduct in the years ended January 31, 1943, 1944, 1945, and 1946, as travel expenditures. The record establishes that it was the practice of the petitioner to draw certain amounts at intervals which were charged on her books to travel and entertainment. It was petitioner's custom to go to New York City frequently to attend fashion shows and to purchase merchandise for her two stores. She usually was accompanied on such trips by two or three experienced buyers for various departments of her stores. The petitioner paid all the transportation, lodging, meals and entertainment expenses for herself and her employees on such trips. The petitioner kept no record of the amounts spent for such purposes. The total amounts withdrawn by the petitioner and charged to travel and entertainment *130 expenses were as follows: 1943
$5,400
1944
6,800
1945
7,300
1946
9,500 The respondent disallowed 25 per cent of the above amounts claimed in the taxable years 1943, 1944 and 1945, and approximately 45.5 per cent of the amount claimed in 1946, and he argues that his determination should be sustained on the principle of the case of Cohan v. Commissioner, 39 Fed. (2d) 540. Although the petitioner kept no record showing that the amounts withdrawn were expended for transportation, lodging, meals and entertainment directly connected with the operation of her stores, we have found as a fact that the full amount claimed as a deduction for such purposes constitutes ordinary and necessary expenses of her business. In the light of the character of the business carried on by the petitioner the amounts claimed do not appear so excessive as to warrant suspicion. Furthermore, the petitioner testified that at the request of the respondent she has kept accurate records of the amounts she expended for such purposes in subsequent years, which show that the amounts claimed in the taxable years were modest in comparison. Issue 4 Issue 4 presents the question *131 whether the petitioner is entitled to deduct in the taxable year ended January 31, 1943, the amount of $2,066.30, representing medical expenses paid on behalf of her brother, Morris Sachs, a key employee of the petitioner. The respondent contends that the payment constituted a gift and is not deductible. That amount was entered on the petitioner's books as a business expense and claimed as a deduction. The petitioner testified that it had been her custom for years to pay medical expenses of certain of her main employees to promote good employer-employee relationship, and was not intended to be a gift. The fact that she claimed the amount as a business expense indicates the lack of any donative intent. We think the payment is to be treated as additional compensation paid in such taxable year. Upon this record we hold that the payment of the sum of $2,066.30, representing medical expenses paid by the petitioner on behalf of her brother, Morris Sachs, was additional compensation and constitutes an ordinary and necessary expense of the business deductible under section 23(a)(1)(A) of the Internal Revenue Code as having been paid in the taxable year ended January 31, 1943. *132 Issue 5 Issue 5 presents the question whether the petitioner is entitled to a deduction of $1,000 paid for her membership in the Blue Ridge Country Club, Inc., and a contribution of $25 which the petitioner made to the Lancaster Chamber of Commerce in the taxable year ended January 31, 1944. The respondent, on brief, makes no contention that the contribution to the Lancaster Chamber of Commerce did not constitute an ordinary and necessary business expense. We therefore hold that the petitioner is entitled to deduct in its taxable year ended January 31, 1944, her contribution of $25 to the Lancaster Chamber of Commerce as an ordinary and necessary business expense incurred and paid in that year. Cf. Smith-Bridgman & Co., 16 T.C. 287. The petitioner testified that she paid for a membership in the Blue Ridge Country Club the sum of $1,000, and that the "investment" was made because members of such club were customers of hers. She also testified that she played golf at such club. We think the payment of $1,000 was partly for personal reasons and partly to acquire good will and in the nature of a capital expenditure. We therefore hold that petitioner has failed to *133 establish that the payment of $1,000 for a membership in the Blue Ridge Country Club constituted an ordinary and necessary expense of carrying on her trade or business and the respondent's disallowance of a deduction of the sum of $1,000 is sustained. Issue 6 Issue 6 presents the question whether the petitioner is entitled to deduct the amount of $27,000 in the taxable year ended January 31, 1945, as a contribution to her exempt employees' pension trust. On her return for such taxable year petitioner claimed a deduction of the amount of $32,000 as a contribution to such trust. The record shows that on January 31, 1945, the petitioner contributed to her employees' pension trust the sum of $5,000 in cash and executed and delivered to the trustee her demand promissory note in the face amount of $27,000, bearing interest at 4 per cent per annum. The note was paid on May 14, 1945. In determining the deficiency respondent allowed as a deduction the amount of $8,123.14, being the aggregate of the $5,000 cash payment and the amount of $3,123.14 paid to the trust in the prior year. He disallowed the amount of $23,876.86 as not having been actually paid within a period of sixty days *134 after the close of the taxable year. It is conceded that the petitioner's pension trust is exempt under section 165(a) and the allowable deductions are those provided for in section 23(p) of the Internal Revenue Code. Section 23(p)(1)(E) provides that payment shall be deemed to be made by a taxpayer on the accrual basis on the last day of the year of accrual, if the payment is on account of such taxable year and is made within sixty days after the close of the taxable year of accrual. In the case of Logan Engineering Co., 12 T.C. 860, we held that the delivery of a note did not constitute payment within the meaning of section 23(p)(1)(E), and denied a deduction of a contribution thus made. The petitioner contends that the facts in the instant case distinguish it from the Logan case, supra. It is argued that since the pension board requested the giving of a promissory note bearing interest so that the trust would have an immediate income producing investment, we should treat the transaction as one where the petitioner paid cash and the trustee immediately *135 loaned the funds to petitioner. To so hold, we think, would constitute an unauthorized extension of the plain mandate of the statute and open the door to possible evasions and abuses. In our opinion, the facts relied upon by the petitioner do not serve to distinguish the Logan case, supra. It will be followed here. The respondent's determination is sustained with respect to this issue. In the alternative, the petitioner contends that if she is not entitled to a deduction of the amount of $27,000 in the taxable year ended January 31, 1945, as not having been paid within sixty days after the close of the year, that amount should be allowed as a deduction in the taxable year ended January 31, 1946, under section 23(p)(1)(A)(ii) of the Code. The record establishes that petitioner claimed the amount of $33,042.71 as a deduction representing a contribution to her employees' pension plan for the taxable year ended January 31, 1946, which the respondent allowed. Harold M. Horne, an insurance attorney, testified that he computed for the petitioner, as of January 31, 1946, the amount required in order to have the pension trust funded in a manner that was actuarially sound was $33,042.71, *136 the amount which the petitioner contributed in that taxable year. He further testified that in April 1946 he revalued some of the assets of the trust and determined there was a deficiency in the assets of $14,816.54. There are no computations showing that the amount of $33,042.71 was not the maximum amount the petitioner was entitled to deduct in the taxable year ended January 31, 1946, under section 23(p) of the Code. This record contains no data which would enable us to compute that portion of the unfunded cost of past and current service credits which may be deducted in the taxable year ended January 31, 1946, under section 23(p)(A)(i) and (ii), upon which the petitioner relies. The petitioner has failed to establish that her alternative contention has merit. Issue 7 The final issue presents the question of the propriety of the respondent's action in imposing a negligence penalty for the taxable year ended January 31, 1944. The respondent contends that the petitioner did not keep adequate books and records and did not properly classify some of her expenditures in such taxable year. The petitioner's books and records were kept by a bookkeeper who had been in her employ for *137 more than twenty years. The petitioner also employed a firm of certified public accountants who audited her books semi-annually and prepared her tax returns. The books of the petitioner recorded all of the petitioner's income and expenditures and were adequate for such purposes. While some of the expenditures were classified under titles which the respondent considers misleading, the record establishes that the classification represented the individual conception of the bookkeeper, with no knowledge or intention upon the part of the petitioner to deceive. This record would not support a finding of negligence or intentional disregard of the rules and regulations and we have found as a fact to the contrary. The negligence penalty is disallowed. Decision will be entered under Rule 50. Footnotes
1. SEC. 24. ITEMS NOT DEDUCTIBLE. * * *
(c) Unpaid Expenses and Interest. - In computing net income no deduction shall be allowed under section 23 (a), relating to expenses incurred, or under section 23 (b), relating to interest accrued - (1) If such expenses or interest are not paid within the taxable year or within two and onehalf months after the close thereof; and (2) If, by reason of the method of accounting of the person to whom the payment is to be made, the amount thereof is not, unless paid, includible in the gross income of such person for the taxable year in which or with which the taxable year of the taxpayer ends; and (3) If, at the close of the taxable year of the taxpayer or at any time within two and onehalf months thereafter, both the taxpayer and the person to whom the payment is to be made are persons between whom losses would be disallowed under section 24 (b)↩.