LIEBIG'S EXTRACT OF MEAT CO. v. LIEBIG EXTRACT CO.

(Circuit Court of Appeals, Second Circuit. May 2, 1910.)

No. 211.

TRADE-MARKS AND TRADE-NAMES (§ 73*)—INFRINGEMENT—EXCLUSIVE RIGHT TO USE THE NAME "LIEBIG" FOR EXTRACT OF MEAT.

Complainant *held* entitled to an injunction restraining defendant from using the word "Liebig" in connection with the sale of extract of meat, on evidence showing without contradiction that Baron Liebig granted to complainant's predecessor in business the exclusive right to use his name in connection with extract of meat made by his process, and that complainant sold its product in the United States under such name for 20 years before the name began to be used in this country by any one else.

[Ed. Note.—For other cases, see Trade-Marks and Trade-Names, Cent. Dig. § 84; Dec. Dig. § 73.*

Assignment of right to use a person's name as a trade-name, see notes to R. W. Rogers Co. v. Wm. Rogers Mfg. Co., 17 C. C. A. 579; Kathreiner's Malzkaffee Fabriken Mit Beschraenkter Haftung v. Pastor Kneipp Medicine Co., 27 C. C. A. 357.]

Appeal from the Circuit Court of the United States for the Southern District of New York.

Suit in equity by the Liebig's Extract of Meat Company, against the Liebig Extract Company. Decree for defendant (172 Fed. 158), and complainant appeals. Reversed.

James L. Steuart (Steuart & Steuart, of counsel), for appellant. Herbert S. Murphy, for appellee.

Before COXE, WARD, and NOYES, Circuit Judges.

WARD, Circuit Judge. The bill in this case proceeds upon the theory that the complainant has the exclusive right to use the name "Liebig" or "Liebig's" in connection with the manufacture and sale of extract of meat in this country. It avers that in 1863 the Société

de Fray Bentos Giebert & Cie was formed under the laws of Belgium for the purpose of manufacturing and selling extract of meat; that in 1865 this Société Anonyme sold out all its business, good will, property and trade-marks to the complainant; that Baron Liebig conferred upon the complainant or its predecessor the exclusive right to use his name in connection with the manufacture and sale of the extract of meat; that the complainant manufactures according to a secret process learned from Baron Liebig; that its business in this country has grown so large that the public understands by the expression "Liebig's Extract" its product.

The bill then avers that the defendant manufactures an extract of meat in packages imitating the complainant's, and prays for a decree enjoining the defendant from using the word "Liebig" in connection with the sale of extract of meat and for an accounting. Appended to the bill are copies of defendant's wrapper, on which the word "Liberty" is printed in obvious imitation of Baron Liebig's signature on the complainant's package. But the use of these labels was abandoned by the defendant before the suit was brought, and the real issue in the case is as to complainant's right to exclusive ownership in the name "Liebig."

The answer avers that the word "Liebig" in any form in connection with extract of meat refers to a formula which, though not invented by Liebig, was brought into prominence by him and generally known under his name before the Fray Bentos Company was in existence and that the word is publici juris.

The complainant began the introduction of its goods into the United States in 1870, and from that time the business grew rapidly and without competition. It was the sole occupant of the field for 20 years or more. Others then began to use the word "Liebig" in connection with their extract of meat, but this has been abandoned almost entirely. The defendant to the knowledge of the complainant had used the name for 6 years before this suit was brought.

The record is very meager on the subject of the real issue. It is shown that in 1847 Liebig in a work called "Chemical Study of Meat" published a formula for extracting meat which had been invented by Proust many years before and that in 1859 in his "Familiar Letters on Chemistry" he recommended this process for use in the manufacture of extract of meat on a large scale. He was evidently the person who commercialized the idea.

The only proof of contracts between Baron Liebig and the complainant or its predecessor is to be found in the testimony of witnesses taken abroad under commissions without cross-interrogatories and read in evidence without objection. Charles Rotter, who was secretary of the complainant from 1865 to 1894, says that Baron Liebig granted it the exclusive right to use his name in connection with extract of meat; Gilligan, the present secretary, says that Baron Liebig gave the complainant the exclusive use of his name in connection with extract of meat manufactured according to his method; Dethioux, one of the managers of complainant from 1895 to 1907, says that Baron Liebig gave it the exclusive right of using his name for the manufacture and

sale of the extract of meat invented by him; Muller, sole manager of the complainant at Antwerp since 1901, says that Baron Liebig gave it the right to use his name in connection with the manufacture and sale of Liebig's Extract of Meat according to his prescription. The contracts were not produced nor called for nor was any objection taken to the testimony. In this state of the case we must find as a fact that Baron Liebig did give the complainant or its predecessor, or both, the exclusive right to use his name in connection with a process of extracting meat invented or promoted by him.

If the complainant is manufacturing under a secret process invented by Baron Liebig, any other person using his name in connection with extract of meat should be enjoined unless he proves that he is using a process open to the public and known as "Liebig's Process." Assuming that the complainant is manufacturing in this way, the defendant should be enjoined, because it has refused to state how it manufactures its extract of meat.

On the other hand, if the complainant is manufacturing according to the process published by Baron Liebig in 1847, but with the exclusive right derived from him to use his name in connection with the manufacture, then the defendant should be enjoined.

We think the important inquiry is as to the situation at the time the Fray Bentos Company was formed. The formula having been published, anybody was free to use it in 1863; but no one was free to use Baron Liebig's name in connection with the product, except by his express permission or by his permission to be implied from the fact of the process becoming generally known as his.

The defendant relies upon certain books offered in evidence, as follows: "Liebig's Chemical Study of Meat" (Heidelberg, 1847) describes a process of extracting meat, but attributes it to Proust; "A Handbook of Dietetics," Moleschott (Darmstadt, 1850); Dick & Fitzgerald's Encyclopedia (1872); Dunglison's Medical Lexicon (Philadelphia, 1874); The National Dispensatory (Philadelphia, 1887); "Chemical Organic Analysis" by Alfred H. Allen (London, 1888); the Scientific American Cyclopedia (New York, 1906); "Life of Justus v. Liebig" by Shenstone (London, 1901). These books simply show that the process in question is known as Liebig's. They throw no light whatever upon any public or private rights in the word "Liebig" at the time he conferred the exclusive right to use his name upon the complainant or its predecessor. If they did they would be incompetent. Stephens on the Law of Evidence, art. 35; Wigmore on Evidence, arts. 1581, 1586.

The very issue in this case was passed upon in England in 1867 by Vice Chancellor Wood in the case of Liebig's Extract of Meat Co., Limited, v. Hanbury, 17 Law Times (N. S.) 298. He erroneously thought that Liebig himself had invented the formula which he published in 1847, but concluded from testimony not in this case that Liebig had allowed his name in connection with extract of meat to become public property before his agreement with the complainant and its predecessor and therefore that anybody could use his name in connection with the product and Liebig could not confer any exclusive

right in it upon the complainant. None of the above-mentioned books shows, what Vice Chancellor Wood found from Baron Liebig's own testimony, that he had given the Royal Pharmacy of Bavaria in 1861 the right to use his name in connection with extract of meat and that no less than five thousand pounds of beef per annum were manufactured at that pharmacy alone.

Judge Seaman, in Liebig's Extract of Meat Co. v. Libby and Others (C. C.) 103 Fed. 87, came to the same conclusion because he found no devolution of title to use Liebig's name from the Royal Pharmacy of Bavaria to the complainant. He evidently had before him the contracts with Baron Liebig and other proof not in this case. Judge Hazel, in Liebig's Extract of Meat Co. v. Walker (C. C.) 115 Fed. 822, also held that the word "Liebig" had become public property. All these decisions were founded upon the proofs before the respective courts and establish no facts in issue in this case. City of Carlsbad v. Kutnow, 71 Fed. 167, 175, 18 C. C. A. 24.

On this record we feel obliged to grant an injunction against the use by the defendant of the word "Liebig" in connection with the sale of extract of meat, but in view of the complainant's acquiescence in the defendant's conduct for six years and of all the circumstances of the case, without an accounting.

Decree reversed, with costs.