MADISON SQUARE GARDEN CORPORATION, Appellant, *v.* UNIVERSAL PICTURES COMPANY, INC., and Others, Respondents.

First Department, December 2, 1938.

*Charles Pickett* of counsel [*Chadbourne, Wallace, Parke & Whiteside*, attorneys], for the appellant.

*Alfred H. Phillips* of counsel [*Charles D. Prutzman* with him on the brief; *Chadbourne, Hunt, Jaeckel & Brown*, attorneys], for the respondents.

DORE, J. This action is in equity for alleged unfair competition arising out of defendants' production and distribution of a moving picture, "Idol of the Crowds." Plaintiff appeals from an order and final judgment dismissing the complaint on defendants' motion before answer under rule 106 of the Rules of Civil Practice on the ground the complaint does not state facts sufficient to constitute a cause of action.

Plaintiff is the owner of Madison Square Garden, a large building and auditorium erected by plaintiff in 1925 at a cost of over $5,000,000, occupying half a block in the borough of Manhattan, New York city. Defendants, three affiliated corporations, one of which, Universal Pictures Company, Inc., is a producer of moving pictures, the other two distributors, produced and distributed a moving picture called "Idol of the Crowds," purporting to show professional ice hockey games in New York city, including moving pictures of a professional ice hockey team, the "Rangers," controlled by plaintiff.

The Special Term held that the complaint failed to show any property right which the plaintiff was entitled to protect in an action for unfair competition; that there was nothing to indicate that defendants asserted the plot of the picture to be other than fiction; that no attempt was made by defendants to "pass off" defendants' picture as that of plaintiff; and that, accordingly, no right to relief was shown either for an injunction or an accounting.

In testing the sufficiency of a complaint on a motion under rule 106, all the allegations therein are assumed to be true and every intendment and fair inference must be made in favor of the pleading. (*Dyer* v. *Broadway Central Bank*, 252 N. Y. 430, 432.) Reading the complaint in the light of that rule, we think it sufficiently states a cause of action for unfair competition.

The complaint alleges that Madison Square Garden, owned and operated by plaintiff, has been chiefly devoted to athletic and sporting events, including ice hockey, and plaintiff has spent large sums of money in advertising the Garden, plaintiff's connection therewith, and events held therein, and has built up and enjoys a widespread reputation and an exceedingly valuable good will in connection with the promotion and exhibition of sporting and athletic events therein; that the Garden was specially designed at considerable cost so that its arena could be converted into a skating rink upon which ice hockey matches and other skating events could be held; that since 1925, during several months of each year, the Garden arena was converted into an ice hockey rink for matches by professional and amateur teams and in particular by the professional teams that are members of the National Hockey League, including the team known as the " Rangers " which always has been and is now controlled by the plaintiff; that plaintiff's connection with the New York " Rangers " has been well known, and plaintiff and its team have enjoyed a valuable good will and reputation with the public; that plaintiff derives large and substantial revenue for the use of the Garden for professional ice hockey games, in the 1936–1937 season alone the attendance at National Hockey League games being in excess of 244,000 persons and plaintiff's revenue in that season from professional ice hockey being in excess of $545,000; that National Hockey League games have never been held in New York city except at the Garden, and since 1925 no professional ice hockey games have been held in New York city except at the Garden, and it is well known that all professional ice hockey games played in New York city by league teams have been and are played at the Garden, in particular the Stanley Cup series at the end of which the Stanley Cup, emblematic of the world's champion professional ice hockey team, is awarded to the winner. The complaint alleges that for many years plaintiff has granted licenses to take and reproduce photographs of events held in the Garden, for use in motion picture news reels only, but not for use in feature motion pictures without plaintiff's express consent and upon payment to plaintiff of a valuable consideration, and plaintiff has derived and now derives a large and substantial revenue therefrom.

The complaint then alleges that the defendants' feature moving picture, "Idol of the Crowds," contains numerous scenes purporting to show professional ice hockey games in New York city, and the rink and interior of the building in which such games are supposed to take place; that numerous persons who have seen the picture believed they were viewing scenes of actual professional ice hockey games played in Madison Square Garden, including scenes showing players of plaintiff's team, the New York "Rangers," whereas the picture does not contain any scenes of professional ice hockey games played in Madison Square Garden, and the rink and auditorium shown in the picture are not the rink and auditorium of the Garden; that defendants were well aware plaintiff would not consent to include in a feature moving picture any pictures of actual professional ice hockey games played in the Garden, without payment to plaintiff of a valuable consideration therefor, and that plaintiff, under any conditions, would not consent to pictures falsely purporting to be pictures of such games played in the Garden in which the New York "Rangers" participated; that defendant Universal Pictures Company, Inc., prior to the production of "Idol of the Crowds," had from time to time taken photographs of professional ice hockey games in the Garden with the condition and understanding that such photographs could be used only in news reels and not in feature moving pictures, without plaintiff's express, prior consent. Plaintiff further alleges that defendant Universal, in connection with the final game of the Stanley Cup series of the year 1936–1937, obtained permission from the management of the Detroit Arena to take photographs of the game in that arena on condition that such photographs would be used only in news reels and not in feature moving pictures; that such photographs were taken; that the identity of the players who participated, and particularly certain players on the plaintiff's team, the New York "Rangers," was recognizable; that thereafter certain of such photographs were incorporated in the moving picture "Idol of the Crowds," without either plaintiff's consent or the consent of the management of the Detroit Arena.

The complaint also alleges that defendants caused to be published a circular containing information about "Idol of the Crowds," and suggesting methods of publicizing the picture; that such circular, a copy of which is annexed to the complaint, has been distributed to motion picture exhibitors and theatre owners and makes frequent references to Madison Square Garden; that these statements and references have been reproduced in publicity read by the general public; that the defendants desired and intended that persons seeing the picture should believe they were viewing professional ice hockey

games played in Madison Square Garden and scenes taken therein, and that plaintiff had approved the inclusion of such scenes, including the players on plaintiff's team, the New York "Rangers."

All of the defendants' acts are alleged to have been done to enhance the popular appeal of "Idol of the Crowds," to promote its sale and increase defendants' revenue, and were done fraudulently with the intention of deceiving the public for defendants' gain and consequent damage and injury to plaintiff; and it is alleged that the use of photographs of ice hockey games not taken in the Garden, in such a way as to lead persons to believe they were, was a violation of defendants' understanding with plaintiff. Plaintiff finally alleges great and irreparable injury to its good will, reputation and business as a result of defendants' acts and that, unless the court restrains defendants, others will refuse to pay plaintiff for the right to reproduce in feature moving pictures photographs of scenes and events held in the Garden, including ice hockey games, and plaintiff will be deprived of a large and substantial revenue. Plaintiff demands judgment for an injunction, an accounting and damages.

From a reading of the lengthy complaint, the essential allegations of which have been summarized above, it is clear that defendants intended to give the public the false and deceptive impression that their picture "Idol of the Crowds" contained genuine professional ice hockey scenes filmed in Madison Square Garden, and that their deceitful intentions were realized in practice. The picture purports to show a professional ice hockey game in connection with the Stanley Cup series in New York. Such games are played only in one place in New York city, viz., Madison Square Garden, owned and operated by plaintiff. The picture contains photographs showing plaintiff's team, the identity of plaintiff's players being recognizable, and the conclusion that would be made and actually was made by the public, on seeing the picture and reading defendants' misleading publicity, was that "Idol of the Crowds" contained genuine moving pictures of the plaintiff's team, the "Rangers," engaged in a Stanley Cup championship match on their home ice in Madison Square Garden.

The frequent reference in defendants' publicity to Madison Square Garden indicates defendants intended the news items and reviews of their pictures to state that the picture contained photographs of hockey games played in the Garden and thus induce the public to see the picture, thus capitalizing for their own profit the valuable good will plaintiff had created for the "Rangers." Among other items, the circular annexed to the complaint states that "the highlight of the picture reveals two evenly matched ice

hockey teams battling in the rink at Madison Square Garden." Misleading reviews have followed from defendants' misleading circular, one magazine stating that the pictures "from the Stanley Cup playoffs in Madison Square Garden are unbeatable for speed, thrills and authenticity." The complaint not merely alleges that defendants' acts were likely to deceive the public but that defendants intended and desired this effect. While the absence of deceitful intent is no defense to an action for unfair competition if plaintiff's rights were invaded (*Higgins Co.* v. *Higgins Soap Co.*, 144 N. Y. 462, 469, 471), nevertheless, it cannot be said that allegations of fraud and deceitful intent are not material. (See *Congress Spring Co.* v. *High Rock Spring Co.*, 45 N. Y. 291, 301.) In *Eastern Construction Co.* v. *Eastern Engineering Co.* (246 N. Y. 459) the Court of Appeals said: "Courts of equity are loathe to hold that a knave may carry out a dishonest plan from which he anticipates benefit because there is no reasonable probability that the anticipation will become reality. In such case the defendant may be in no position to deny the existence of such probability when asserted by the plaintiff. Even if the remark of Cozens-Hardy, Master of the Rolls, in similar case, that 'if you find a defendant who is a knave, you may presume he is not a fool' (*Claudius Ash Sons & Co., Ltd.,* v. *Invicta Manufacturing Company, Ltd.,* 28 Reports of Patent Cases at page 603) may not completely stand the test of strict legal analysis, it sufficiently states a working rule which may well be applied in proper circumstances." For the purpose of this motion, it must be accepted as true that defendants' conduct was likely to produce and did in fact produce the false impression on the part of the public, that "Idol of the Crowds" contained genuine pictures of professional ice hockey scenes in Madison Square Garden, including pictures of plaintiff's team, the "Rangers."

We think too, that the complaint sufficiently alleges a misappropriation of plaintiff's property rights. Plaintiff had built up a valuable business licensing the use of genuine photographs taken in the Garden in feature moving pictures, and from that business had derived substantial revenue. That business had been created by the expenditure on plaintiff's part of large sums of money and of effort and skill in the management of its enterprise. In *Fisher* v. *Star Co.* (231 N. Y. 414, 428) the Court of Appeals said: "Any civil right not unlawful in itself nor against public policy, that has acquired a pecuniary value, becomes a property right that is entitled to protection as such. The courts have frequently exercised this right. They have never refused to do so when the facts show that the failure to exercise equitable jurisdiction would permit unfair competition in trade or in any matter pertaining

to a property right." The court quoted with approval the following from *International News Service* v. *Associated Press* (248 U. S. 215, 236, 237): "The rule that a court of equity concerns itself only in the protection of property rights treats any civil right of a pecuniary nature as a property right (*In re Sawyer*, 124 U. S. 200, 210; *In re Debs*, 158 U. S. 564, 593); and the right to acquire property by honest labor or the conduct of a lawful business is as much entitled to protection as the right to guard property already acquired. [Citations.] It is this right that furnishes the basis of the jurisdiction in the ordinary case of unfair competition." In *Rudolph Mayer Pictures, Inc.*, v. *Pathe News, Inc.* (235 App. Div. 774), this court affirmed without opinion a preliminary injunction enjoining the defendants therein from distributing pictures which it took of a boxing match in Ebbets Field. The field was leased by Dodger A. C., Inc., which had agreed to give the plaintiff, Rudolph Mayer Pictures, Inc., exclusive rights to take and sell motion pictures of the Sharkey-Walker contest. The defendant, Pathe News, Inc., knew of this arrangement but sent camera men to Ebbets Field where they took pictures, and another camera man took long distance pictures from the roof of an adjoining building. Defendants thereafter combined the photographs into a news reel and distributed them. Defendants argued that plaintiffs had no property right which could be protected; that the right to take photographs of a boxing match was not a form of property known to the law, and that defendants' acts did not constitute unfair competition. In overruling these contentions, we necessarily held that the defendants had violated a property right and should be enjoined.

In *Reiner* v. *North American Newspaper Alliance* (259 N. Y. 250) the owners of the Graf Zeppelin made arrangements with a third party for the exclusive news rights of the flight of the dirigible from Germany to New York. The plaintiff in that case was a passenger on the dirigible who, as a condition of his passage, had agreed not to send reports of the flight while *en route* and for eight days after it ended, but he did send reports to the defendant pursuant to an express contract to do so. Plaintiff was suing to recover on his contract with the defendant and the Court of Appeals held that by that contract plaintiff had robbed the third party of the exclusive right to the news rights of the voyage. In his concurring opinion, Judge CRANE said, "The owners of the ship, therefore, had the right to keep this news to themselves, the same as they had the right to possess any other property, at least until the landing of the ship " (at p. 259).

The plaintiff clearly had a property right in its good name, its reputation, its good will built up at considerable expense, and its business in licensing genuine moving picture photographs to be used in feature films from which it had derived a substantial revenue. Defendants well knowing that they could not, without paying plaintiff, get permission to reproduce professional ice hockey games of plaintiff's team, the " Rangers," within Madison Square Garden, attempted to do by indirection what they could not do directly, when they took pictures of the " Rangers " playing in Detroit, on an agreement to use them only in news reels, and thereafter incorporated them into a feature film in such way as to lead the public to believe that the pictures actually were taken in Madison Square Garden in New York city, with plaintiff's approval and permission. They had thus appropriated to themselves precisely the same commercial advantages they would have had if the picture was in fact filmed in the Garden while plaintiff's team was engaged therein in a championship ice hockey contest.

Nor do we consider defendants immune because the plot of their moving picture was concededly fiction. The complaint alleges that the pictures contained real photographs of plaintiff's own team set in a background that inevitably led the public to believe that they were playing on their home ice in Madison Square Garden. The players themselves were recognizable. Their presence in the picture, their reputation, plaintiff's reputation and good will were utilized by defendants to induce the public to see the picture, all to the plaintiff's loss and defendants' gain. Though the plot of the picture was fiction, the melodramatic interest in the story was increased by apparently authentic photographs of the plaintiff's team playing a championship ice hockey match in an arena purporting to be located in New York city. The public would suppose, and actually did suppose, that the background of the film was an authentic background presenting scenes of actual games in which the plaintiff's team participated in New York. Defendants' circulars referred to the arena as Madison Square Garden. Even in a story that is obviously fiction so far as its plot is concerned, defendants should not be permitted, by the unfair practices alleged, to violate and appropriate to themselves plaintiff's valuable property rights. Condemnation of such deceptive and fraudulent practices will not in the least restrict the activities of honest producers. If defendants, to give authentic realism and an added attraction to their film, desired to incorporate actual pictures of professional ice hockey matches in which a team participated whose national reputation had been built up by years of labor and expenditure on the part of another, they could easily do so by securing the

permission of that other person on payment of a consideration that would reimburse him for the use of such commercially valuable good will and property rights.

A court of equity acts to promote honesty and fair dealing as well as to protect the purchasing public and the property rights of individuals. The evident purpose of these defendants in using pictures of plaintiff's team and referring in their publicity to the scene of their drama as Madison Square Garden in New York city was to appropriate the financial value such team and name had acquired through the plaintiff's labor, expenditure and skill. The novelty and ingenuity of the method defendants employed in achieving that result will not deter the court from action. There may be unfair competition by misappropriation as well as by misrepresentation. Both elements are here. Equity is not concerned about the means by which fraud is done; it deals with the results arising from the fraud.

In all cases where the equitable power of the court is invoked, the controlling question is whether the acts complained of are fair or unfair. (*Fisher* v. *Star Co.*, 231 N. Y. 414, 427.) The picture was deceptive, the circular and the publicity were deceptive. Defendants infringed on plaintiff's property rights as well as violated the implied obligations flowing from their contract with the plaintiff.

The judgment and order should be reversed, with costs, and the motion denied.

MARTIN, P. J., GLENNON, UNTERMYER and CALLAHAN, JJ., concur.

Judgment and order unanimously reversed, with costs, and the motion denied.