HAELAN LABORATORIES, Inc. v. TOPPS CHEWING GUM, Inc.

No. 158, Docket 22564.

United States Court of Appeals Second Circuit.

Argued Jan. 6, 1953.

Decided Feb. 16, 1953.

On Petition for Rehearing and Motion to Stay Mandate March 20, 1953.

player providing that plaintiff for a stated term should have the exclusive right to use the ball-player's photograph in connection with the sales of plaintiff's gum; the ball-player agreed not to grant any other gum manufacturer a similar right during such term; the contract gave plaintiff an option to extend the term for a designated period.

(b). Defendant, a rival chewing-gum manufacturer, knowing of plaintiff's contract, deliberately induced the ball-player to authorize defendant, by a contract with defendant, to use the player's photograph in connection with the sales of defendant's gum either during the original or extended term of plaintiff's contract, and defendant did so use the photograph.

Defendant argues that, even if such facts are proved, they show no actionable wrong, for this reason: The contract with plaintiff was no more than a release by the ball-player to plaintiff of the liability which, absent the release, plaintiff would have incurred in using the ball-player's photograph, because such a use, without his consent, would be an invasion of his right of privacy under Section 50 and Section 51 of the New York Civil Rights Law; this statutory right of privacy is personal, not assignable; therefore, plaintiff's contract vested in plaintiff no "property" right or other legal interest which defendant's conduct invaded.

Both parties agree, and so do we, that, on the facts here, New York "law" governs. And we shall assume, for the moment, that, under the New York decisions, defendant correctly asserts that any such contract between plaintiff and a ball-player, in so far as it merely authorized plaintiff to use the player's photograph, created nothing but a release of liability. On that basis, were there no more to the contract, plaintiff would have no actionable claim against defendant. But defendant's argument neglects the fact that, in the contract, the ball-player also promised not to give similar releases to others. If defend-

Jonas J. Shapiro, New York City (Janet Perlman, New York City, of counsel), for plaintiff.

Pennie, Edmonds, Morton, Barrows & Taylor, New York City (George E. Middleton, New York City, of counsel), for defendant.

Before SWAN, Chief Judge, and CLARK and FRANK, Circuit Judges.

FRANK, Circuit Judge.

After a trial without a jury, the trial judge dismissed the complaint on the merits.[1] The plaintiff maintains that defendant invaded plaintiff's exclusive right to use the photographs of leading baseball-players. Probably because the trial judge ruled against plaintiff's legal contentions, some of the facts were not too clearly found.

1. So far as we can now tell, there were instances of the following kind:

(a). The plaintiff, engaged in selling chewing-gum, made a contract with a ball-

[1]. Plaintiff abandoned its appeal from the dismissal of that part of the complaint asserting unfair competition and trade-

mark infringement. Defendant has abandoned its cross-appeal from the dismissal of its counterclaim.

ant, knowing of the contract, deliberately induced the ball-player to break that promise, defendant behaved tortiously.[2] See, e. g., Hornstein v. Podwitz, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1; 6 Corbin, Contracts (1951) Sec. 1470.

Some of defendant's contracts were obtained by it through its agent, Players Enterprise, Inc; others were obtained by Russell Publishing Co., acting independently, and were then assigned by Russell to defendant. Since Players acted as defendant's agent, defendant is liable for any breach of plaintiff's contracts thus induced by Players. However, as Russell did not act as defendant's agent when Russell, having knowledge of plaintiff's contract with a player, by subsequently contracting with that player, induced a breach of plaintiff's contract, defendant is not liable for any breach so induced; nor did there arise such a liability against defendant for such an induced breach when defendant became the assignee of one of those Russell contracts.

2. The foregoing covers the situations where defendant, by itself or through its agent, induced breaches. But in those instances where Russell induced the breach, we have a different problem; and that problem also confronts us in instances—alleged in one paragraph of the complaint and to which the trial judge in his opinion also (although not altogether clearly) refers—where defendant, "with knowledge of plaintiff's exclusive rights," used a photograph of a ball-player without his consent during the term of his contract with plaintiff.[3]

With regard to such situations, we must consider defendant's contention that none of plaintiff's contracts created more than a release of liability, because a man has no legal interest in the publication of his picture other than his right of privacy, i. e., a personal and non-assignable right not to have his feelings hurt by such a publication.

■ A majority of this court rejects this contention. We think that, in addition to and independent of that right of privacy (which in New York derives from statute), a man has a right in the publicity value of his photograph, i. e., the right to grant the exclusive privilege of publishing his picture, and that such a grant may validly be made "in gross," i. e., without an accompanying transfer of a business or of anything else. Whether it be labelled a "property" right is immaterial; for here, as often elsewhere, the tag "property" simply symbolizes the fact that courts enforce a claim which has pecuniary worth.

■ This right might be called a "right of publicity." For it is common knowledge that many prominent persons (especially actors and ball-players), far from having their feelings bruised through public exposure of their likenesses, would feel sorely deprived if they no longer received money for authorizing advertisements, popularizing their countenances, displayed in newspapers, magazines, busses, trains and subways. This right of publicity would usually yield them no money unless it could be made the subject of an exclusive grant which barred any other advertiser from using their pictures.

We think the New York decisions recognize such a right. See, e. g., Wood v. Lucy, Lady Duff Gordon, 222 N.Y. 88, 118 N.E. 214; Madison Square Garden Corp. v. Universal Pictures Co., 255 App.Div. 459, 465, 7 N.Y.S.2d 845; Cf. Liebig's Extract of Meat Co. v. Liebig Extract Co., 2 Cir., 180 F. 688.

We think Pekas Co., Inc. v. Leslie, 52 N.Y.L.J.1864, decided in 1915 by Justice Greenbaum sitting in the Supreme Court Term, is not controlling since—apart from a doubt as to whether an opinion of that court must be taken by us as an authoritative exposition of New York law—the opinion shows that the judge had his attention directed by plaintiff exclusively to Sections

2. Defendant is also liable if he thus induced any player to breach his contract to renew.

3. On the remand, the judge should make findings on this subject, on the bsais of the evidence now in the record and such additional evidence as the parties may introduce.

50 and 51 of the New York statute, and, accordingly, held that the right of privacy was "purely personal and not assignable" because "rights for outraged feelings are no more assignable than would be a claim arising from a libelous utterance." We do not agree with Hanna Mfg. Co. v. Hillerich & Bradsby Co., 5 Cir., 78 F.2d 763, 101 A.L.R. 484; see adverse comments on that decision in 36 Col.Law Rev. (1936) 502, 49 Harv. Law Rev. (1936) 496, and 45 Yale L.J. (1936) 520.[4]

We said above that defendant was not liable for a breach of any of plaintiff's contracts induced by Russell, and did not become thus liable (for an induced breach) when there was assigned to defendant a contract between Russell and a ball-player, although Russell, in making that contract, knowingly induced a breach of a contract with plaintiff. But plaintiff, in its capacity as exclusive grantee of a player's "right of publicity," has a valid claim against defendant if defendant used that player's photograph during the term of plaintiff's grant and with knowledge of it. It is no defense to such a claim that defendant is the assignee of a subsequent contract between that player and Russell, purporting to make a grant to Russell or its assignees. For the prior grant to plaintiff renders that subsequent grant invalid during the period of the grant (including an exercised option) to plaintiff, but not thereafter.[5]

3. We must remand to the trial court for a determination (on the basis of the present record and of further evidence introduced by either party) of these facts: (1) the date and contents of each of plaintiff's contracts, and whether plaintiff exercised its option to renew; (2) defendant's or Players' conduct with respect to each such contract.

Of course, if defendant made a contract with a ball-player which was not executed—

or which did not authorize defendant to use the player's photograph—until the expiration of the original or extended term of plaintiff's contract with that player, or which did not induce a breach of the agreement to renew, then defendant did no legal wrong to plaintiff. The same is true of instances where neither defendant nor Players induced a breach of plaintiff's contract, and defendant did not use the player's photograph until after the expiration of such original or extended or option term.

If, upon further exploration of the facts, the trial court, in the light of our opinion, concludes that defendant is liable, it will, of course, ascertain damages and decide what equitable relief is justified.

Reversed and remanded.

SWAN, Chief Judge (concurring in part).

I agree that the cause should be reversed and remanded, and I concur in so much of the opinion as deals with the defendant's liability for intentionally inducing a ball-player to breach a contract which gave plaintiff the exclusive privilege of using his picture.

On Defendant's Petition for Rehearing

PER CURIAM.

1. In our original opinion, footnote 1, we said that defendant had "abandoned its cross-appeal from dismissal of its counter-claim." But we are now satisfied that defendant had preserved its cross-appeal on the issue of impairment of its own contract rights. Therefore, if plaintiff induced breaches of exclusive agreements which defendant had made with ball-players, defendant is entitled to relief against plaintiff. Accordingly, we add the following to our mandate as additional items for determination by the trial court: (3) The

4. It should be noted that the Hanna case was a pre-Erie-Tompkins decision, which, although it discussed the New York decisions, did not purport to decide authoritatively the New York "law" on the subject.

5. Since plaintiff asserts that, in all instances, defendant acted with knowledge of plaintiff's contracts, we need not consider whether and how far defendant would be liable to plaintiff, absent such knowledge, when, during the term of plaintiff's contract, defendant used a player's photograph without inducing a breach of that contract.

date and contents of each of defendant's contracts under which defendant claims, and whether defendant exercised its option to renew, and (4) plaintiff's conduct with respect to each such contract.

2. The last sentence under point 2 of our opinion might suggest that, as long as one of the parties had a contract with a ball-player giving it exclusive rights, any subsequent contract made between that player and the other party before expiration of the prior rights is necessarily invalid. This point appears to require further clarificaton. Certainly, if the terms of one party's contract provide that its rights shall go into effect only upon expiration of a prior grantee's exclusive rights, the later grant would become fully effective at the time of such expiration. Indeed, in this situation no tort has been committed. However, the problem becomes more complex where the subsequent contract, by its terms, purports to go into effect before termination of any prior exclusive rights. Where the party soliciting such a subsequent contract knows of the prior rights and actually proceeds to use the grant given in violation thereof, its contract is tainted with illegality and is utterly invalid. See Reiner v. North American Newspaper Alliance, 259 N.Y. 250, 181 N.E. 561, 83 A.L. R. 23. Hence such a contract would convey no rights even if it ran beyond the duration of the other party's prior rights. But where the subsequent solicitor treated its contract as if it became effective only upon expiration of any prior rights and made no effort to use the grant before then, that grant would bloom into full force as soon as the earlier rights expired. The same is true if the subsequent grantee did not know at the time he entered into his contract that the ball-player had already given exclusive rights to another party. The validity of one party's contracts beyond the expiration date of prior exclusive rights given the other will thus depend on the district court's findings of fact as to the considerations we have pointed out.

## On Plaintiff's Motion for a Stay

We deny plaintiff's motion for a temporary stay. But we have directed that our mandate shall issue forthwith in order that the trial court may immediately entertain a motion by either party for a temporary injunction.[1] Because of the seasonal character of the business here involved, the taking of evidence on such a motion should be conducted, and the decision should be made, with the utmost dispatch. Without intimating what the decision should be, it may be suggested that the trial judge in his discretion (1) may think it advisable at once to require that a party desiring to avoid being enjoined shall give a bond in a substantial amount, and (2) may deem it wise to issue a series of temporary injunctions, *i.e.*, to enjoin the use by one party of a particular player's picture as and when the exclusive right of the other party to the use of such picture is established by the evidence.

## On Defendant's Motion to Stay Mandate and Plaintiff's Motion to Award It Appellate Costs

PER CURIAM:

The motion for stay of mandate is denied and the Clerk of the Court is directed to issue the mandate forthwith.

Costs of appeal are awarded to the plaintiff-appellant, with the exception of the item for printing the Transcript of Record. As to this item only one-half the cost of printing is awarded inasmuch as it contains a great deal of matter unnecessary for adequate presentation of the questions raised by the appeal.

1. We have denied defendant's motion for a stay pending action by the Supreme Court on a petition for certiorari.