**BI–RITE ENTERPRISES, INC., Artemis, Inc., Andy Taylor, John Taylor, Nick Rhodes, Simon Lebon, Bob Halford, K.K. Downing, Ian Hill, Glen Tipton, Dave Holland, Steve Harris, Dave Murray, Adrian Smith, Bruce Dickinson and Niko McBrain**

v.

**BRUCE MINER POSTER COMPANY, INC. and Bruce Miner.**

Civ. A. No. 84–611–Z.

United States District Court, D. Massachusetts.

April 9, 1984.

Amended Order April 11, 1984.

On Motion to Modify Injunction April 16, 1984.

Wendy E. Parmet, Hill & Barlow, Boston, Mass., Jules Zalon, David O'Driscoll, South Orange, N.J., for plaintiffs.

M. Lawrence Oliverio, Mark A. Fischer, Jerry Cohen, Cohen & Berg, P.C., Boston, Mass., for defendant.

## MEMORANDUM OF DECISION AND ORDER

ZOBEL, District Judge.

Plaintiffs Bi-Rite Enterprises, Inc. ("Bi-Rite") and Artemis, Inc. ("Artemis") are in the "popular music novelty merchandise" business. They are major manufacturers and distributors of novelty merchandise, such as posters, buttons, patches, stickers, emblems, and transfers bearing the names, trademarks, logos and likenesses of major popular musical performers and groups. Bi-Rite and Artemis obtained the rights to market this merchandise pursuant to licensing agreements with various performers and groups. The members of three of these groups, Duran Duran, Judas Priest, and Iron Maiden, are here named as individual plaintiffs.

Plaintiffs claim that defendant Bruce Miner Poster Co., a poster distributor, and its principal have infringed plaintiffs' exclusive rights to commercially exploit the names and likenesses of various performers and groups in North America by distributing posters without proper authorization. On March 5, 1984, plaintiffs obtained an ex parte temporary restraining order and seizure order. They now seek a preliminary injunction against the manufacture, distribution and sale by defendants of posters bearing the names or likenesses of those performers or groups to whom plaintiffs claim exclusive rights.[1]

■ Plaintiffs must satisfy a four part test in order to be entitled to injunctive relief. As recently set out by the First Circuit, plaintiffs must establish:

(1) that the plaintiff will suffer irreparable injury if the injunction is not granted; (2) that such injury outweighs any harm which granting injunctive relief would inflict on the defendant; (3) that plaintiff has exhibited a likelihood of success on the merits; and (4) that the public interest will not be adversely affected by the granting of the injunction.

*Planned Parenthood League of Massachusetts v. Bellotti,* 641 F.2d 1006, 1009 (1st Cir.1981); *Georgi v. Doody,* 537 F.Supp. 1251, 1253 (D.Mass.1982).

### A. *Likelihood of Success on the Merits*

■ Plaintiffs' chief claim is that defendants have misappropriated plaintiffs' rights of publicity. The right of publicity, where recognized, "grants a person an exclusive right to control the commercial value of his name and likeness and to prevent others from exploiting that value without permission." *Bi-Rite Enterprises v. Button Master,* 555 F.Supp. 1188, 1198 (S.D.N.Y.1983); *see, e.g., Martin Luther King, Jr. Center for Social Change v. American Heritage Products,* 694 F.2d 674, 676 (11th Cir.1983); *Memphis Development Foundation v. Factors Etc., Inc.,* 616 F.2d 956, 958 (6th Cir.), *cert. denied,* 449 U.S. 953, 101 S.Ct. 358, 66 L.Ed.2d 217 (1980); *Haelan Laboratories v. Topps Chewing Gum,* 202 F.2d 866, 868 (2d Cir.1953).

■ The right of publicity is assignable and may be licensed by its owner. *American Heritage Products,* 694 F.2d at 680–81; *Button Master,* 555 F.Supp. at 1199–1200. Thus, in the instant case, Bi-Rite and Artemis, Inc. assert their rights as exclusive licensees of various performers, while the individual plaintiffs assert their own rights of publicity.

Bi-Rite and Artemis, Inc. claim that their rights of publicity have been violated by

---

1. Although Bi-Rite and Artemis, Inc. assert rights to market merchandise pursuant to exclusive licenses for some groups and nonexclusive licenses for others, in this proceeding they seek a preliminary injunction against defendants with respect only to the groups from whom they claim to have exclusive licenses.

virtue of exclusive licenses with the following groups and performers: [2]

| Bi–Rite | Artemis |
|---|---|
| Billy Squier | Barry Manilow |
| Asia | Belle Stars |
| Fastway | Thomas Dolby |
| Quiet Riot | Culture Club |
| The Who | |
| Stray Cats | |
| Quarter Flash | |
| Nazareth | |
| Phil Collins | |
| Genesis | |
| Doobie Brothers | |
| Rainbow | |
| Motley Crue | |
| Donna Summers | |

Closer examination of these licenses reveals, however, that many are nonexclusive, or, at most, exclusive with respect only to particular photographs to be designated by the licensors. Bi-Rite and Artemis seek a preliminary injunction extending only to its exclusive licenses (*see* note 1, *infra*). I find that Bi-Rite and Artemis hold exclusive rights to the following groups or performers:

| Bi–Rite | Artemis, Inc. |
|---|---|
| Billy Squier | Thomas Dolby |
| Asia | |
| Fastway | |
| Quiet Riot | |
| The Who | |
| Stray Cats | |
| Motley Crue | |
| Donna Summers | |

As to these, plaintiffs have shown a likelihood of success on the merits. The parties agree that nearly all states in the United States recognize the right of publicity, but that no such right exists in Great Britain, where many of the performers or groups listed above are domiciled. Defendants argue that domicile is determinative of choice of law in right of publicity cases. As a result, they say, the British performers have no protected right of publicity. The parties agree that, because a right of publicity is a proprietary interest, property conflict of laws rules apply in determining whether such a right exists. *See Groucho Marx Productions v. Day and Night Co.,* 689 F.2d 317, 319 (2d Cir.1982); *Factors Etc., Inc. v. Pro Arts, Inc.,* 652 F.2d 278, 281 (2d Cir.1981), *cert. denied,* 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982); *Bi-Rite Enterprises v. Button Master,* 555 F.Supp. 1188, 1197 (S.D.N.Y.1983). They also agree that Massachusetts courts would look to the law of the situs of the property in property cases. The only question, therefore, is how to determine the situs of a right of publicity.

■ In Massachusetts, the right of publicity is protected statutorily by Mass.Gen. Laws Ann. ch. 214, § 3A. The Supreme Judicial Court has said that the statute protects "the interest in not having the *commercial value* of one's name, portrait or picture appropriated to the benefit of another." *Tropeano v. Atlantic Monthly Co.,* 379 Mass. 745, 400 N.E.2d 847, 850 (1980) (emphasis added). Although the Massachusetts courts have not addressed the issue now before me, I hold that the situs of the right of publicity is where the "commercial value" of one's persona is exploited. While in some cases, the plaintiff's domicile may be a relevant factor, it will generally be more important to consider where the plaintiff has developed and exploited his right of publicity through licensing agreements, assignments or merchandising schemes. Indeed, the New York courts have held that to establish a violation of his right of publicity, a plaintiff must show "(1) that his name or likeness has publicity value; [and] (2) that he himself has 'exploited' his name or likeness by acting 'in such a way as to evidence his ... own recognition of the extrinsic commercial value of his ... name or likeness, and manifested that recognition in some overt manner ...,'" *Lerman v. Chuckleberry Publishing,* 521 F.Supp. 228, 232 (S.D.N.Y. 1981), in addition to showing unauthorized appropriation by the defendant.

This conflicts rule is in accord with the outcome of the few cases which have addressed the choice of law issue in right of

---

**2.** Plaintiffs' complaint lists eleven other groups and performers with whom it claims to have exclusive licenses. These licenses were not introduced into evidence and so are not before me.

publicity cases. In *Groucho Marx Productions v. Day and Night Co.*, 689 F.2d 317 (2d Cir.1982), the court applied California law to determine whether the Marx Brothers' rights of publicity survived their deaths. The court noted that the Marx Brothers were California residents at their death, the plaintiff corporation to which Groucho assigned his right of publicity was a California corporation, and the assignment contract was executed in California. *Id.* at 321. Thus, the right of publicity was exercised in California.

Similarly, in *Factors Etc., Inc. v. Pro Arts, Inc.*, 652 F.2d 278 (2d Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1973, 72 L.Ed.2d 442 (1982), the court applied the law of Tennessee in a case involving Elvis Presley's right of publicity. The court considered that Presley was a Tennessee domiciliary, that he assigned his rights to a Tennessee corporation, which in turn licensed the rights in Tennessee to plaintiff corporation, the agreement to be construed in accordance with Tennessee law.

Finally, the court in *Bi-Right Enterprises, Inc. v. Button Master*, 555 F.Supp. 1188 (S.D.N.Y.1983), stated that "the law of the states in which plaintiffs or their exclusive licensees reside controls." *Id.* at 1197. In that case, the court applied Illinois law to Bi-Rite, an Illinois corporation. The court determined that Georgia law controlled the rights of the musical groups Judas Priest and Iron Maiden; although the group members resided in Great Britain, they marketed themselves through a Georgia-based merchandising representative. Bi-Rite and the members of Judas Priest and Iron Maiden are plaintiffs in the case before me.

■ I reach the same result in the instant case. Although the members of the groups at issue here reside both in the United States and abroad, they have all exploited their rights in the United States through licensing agreements with Artemis, Inc. and Bi-Rite. The law of Georgia governs the rights of Judas Priest, Iron Maiden, and Duran Duran, the members of which are named as individual plaintiffs. Although all of the members live in Great

Britain, their merchandising representative is located in Macon, Georgia and is responsible for policing and protecting the use of the groups' names, logos, and likenesses. Bi-Rite is an Illinois corporation; the law of Illinois governs with respect to it. Finally, Artemis is a Connecticut corporation; the law of that state, therefore, controls its rights.

■ Defendants argue that, notwithstanding any rights of publicity, because the groups and performers at issue authorized photographers to photograph them and imposed no explicit restrictions, the photographers were free to commercially exploit these photographs in any way that they chose. This argument, tantamount to a claim that by allowing himself to be photographed, a performer gives up his right of publicity, falls of its own weight. The right to control the use and exploitation of one's name and likeness through sale of merchandise is an extremely valuable asset to popular performers and groups. By authorizing photographs, a performer does not, without more, license their commercial exploitation. *See Ali v. Playgirl, Inc.*, 447 F.Supp. 723, 727 (S.D.N.Y.1978) ("That [plaintiff] may have voluntarily on occasion surrendered [his] privacy, for a price or gratuitously, does not forever forfeit for anyone's commercial profit so much of [his] privacy as [he] has not relinquished.") As the Supreme Court has said, "No social purpose is served by having the defendant get free some aspect of the plaintiff that would have market value and for which he would normally pay." *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 576, 97 S.Ct. 2849, 2857, 53 L.Ed.2d 965 (1977) (quoting Kalven, *Privacy in Tort Law—Were Warren and Brandeis Wrong?*, 31 Law & Contemp.Probs. 326, 331 (1966)).

■ Defendants concede that Georgia, Connecticut and Illinois all recognize a right of publicity. Accordingly, plaintiff has demonstrated a likelihood of success on the merits.

## B. *Irreparable Injury*

■ As was previously noted, plaintiffs' rights of publicity are extremely valuable proprietary rights. The value of these rights depend, in large part, on plaintiffs' ability to maintain their exclusivity. *See Haelan Laboratories v. Topps Chewing Gum*, 202 F.2d 866, 868 (2d Cir.1953). In light of the ephemeral nature of stardom in the popular music industry, plaintiffs' rights of publicity may be commercially valuable for only a short period of time. Moreover, courts have repeatedly noted the difficulty of proving monetary damages in cases involving violation of rights of publicity. *See, e.g., Factors Etc., Inc. v. Creative Card Co.*, 444 F.Supp. 279, 285 (S.D.N.Y.1977); *Ali v. Playgirl, Inc.*, 447 F.Supp. 723, 729 (S.D.N.Y.1978); *Uhlaender v. Hendrickson*, 316 F.Supp. 1277, 1283 (D.Minn.1970). Finally, plaintiffs are unable to approve defendants' posters to assure that they are in keeping with the carefully crafted public images of the performers and groups depicted. I find, therefore, that plaintiffs will be irreparably harmed if no injunctive relief is granted.

## C. *Weighing of the Potential Harms*

■ Defendants claim that they will be irreparably harmed if injunctive relief is granted. In light of the small number of groups or performers exclusively controlled by plaintiffs, and the rapid turnover in "hot" groups, I find that the potential harm to defendants is, in fact, small. The harm to plaintiffs in being unable to reap the benefits of their exclusive rights outweighs the harm to defendants that may be caused by curtailing the sale of certain posters.

## D. *Public Interest*

■ I find that the public interest is best served by protecting "the right of the individual to reap the reward of his endeavors." *Zacchini v. Scripps-Howard Broadcasting Co.*, 433 U.S. 562, 573, 97 S.Ct. 2849, 2856, 53 L.Ed.2d 965 (1977). The public interest will not be adversely affected by injunctive relief.

In light of the foregoing, plaintiffs' motion for a preliminary injunction is granted with respect to the following groups or performers:

| | |
|---|---|
| Thomas Dolby | Billy Squier |
| Asia | Fastway |
| Quiet Riot | The Who |
| Stray Cats | Donna Summers |
| Motley Crue | Judas Priest |
| Iron Maiden | Duran Duran |

Defendants, their agents, servants, employees, attorneys, officers, directors, successors, assigns and/or any other individual or entity within their control or supervision and/or all other individuals or entities acting in concert with the defendants or on their behalf are hereby enjoined from:

(a) manufacturing, distributing, selling, offering for sale or advertising posters bearing the names or likenesses of the aforementioned performers or groups;

(b) effecting assignments, issuing licenses, forming new entities or associations or utilizing any other devices for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraph (a) above; and

(c) aiding, abetting, encouraging or inducing any other parties, including customers of the defendants, to do any of the aforementioned acts.

Plaintiffs' motion for preliminary injunction is denied with respect to all other performers and groups.

Plaintiffs are ordered to return to defendants forthwith all materials seized from defendants not pertaining to the performers and groups that are the subject of this preliminary injunction.

### AMENDED ORDER

The order dated April 9, 1984, requiring plaintiff to return to defendants all materials seized from defendants not pertaining to the performers and groups that are the subject of the April 9 preliminary injunction, is amended to exclude posters bearing the name and/or likeness of Michael Jackson ("Michael Jackson posters"). Michael

Jackson posters need not be returned, defendants having conceded that they have no rights to them.

### ON MOTION TO MODIFY INJUNCTION

On April 9, 1984, this Court issued a preliminary injunction enjoining defendants from manufacturing or selling posters bearing the names or likenesses of those popular music performers and groups to which I found plaintiffs hold exclusive "poster rights." With respect to those performers and groups to which plaintiffs had failed to prove their exclusive rights, I ordered plaintiffs to return to defendants all materials seized from defendants. On April 11, 1984, I amended this order to exclude the return of posters bearing the name or likeness of Michael Jackson, defendants having conceded at the evidentiary hearing that they had no rights to Michael Jackson posters. Plaintiffs now move for relief from my Order of April 9, 1984. They seek to expand the preliminary injunction to include Michael Jackson and Rick Springfield. In addition, they request an opportunity to present evidence to prove the existence of oral exclusive licenses with other performers and groups and to prove the exclusivity of licenses previously submitted so that these performers and groups too can be added to the preliminary injunction.

Defendants have represented to this Court that it will cease to merchandise Michael Jackson posters. In light of this representation and the Amended Order of April 11, 1984, no further action need be taken with respect to Mr. Jackson.

As for plaintiffs' other requests, the parties in this case had approximately five hours, over the course of three days, to present evidence and argument in this case. The hearing was held on a priority basis. At that time no evidence was presented as to the existence of oral contracts or to explain ambiguities in the written contracts introduced into evidence. Moreover, no licensing agreement between plaintiffs and Rick Springfield was entered into evidence.

The Court addressed in its April 9, 1984 Order, as amended, all of the contracts that were before it. Accordingly, plaintiffs' motion to modify the Order of April 9, 1984 is denied. To the extent that plaintiffs seek to reopen this matter for the introduction of additional evidence, the Court will schedule a hearing as its calendar permits.